UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

The Continental Insurance Company, et al.
                              Plaintiffs
                  v.
M/V ONE APUS, IMO no. 9806079,
including its engines, boilers, tackle,
and other appurtenances, etc., *in rem*; et al.
                              Defendants

This Document Relates To:
IN RE: *ONE APUS* CONTAINER SHIP INCIDENT
ON NOVEMBER 30, 2020 22-MD-3028 (PAE)
-------------------------------------------------------------X

# COMPLAINT FOR CARGO DAMAGE

The Continental Insurance Company and the other plaintiffs identified on Schedule A ("Cargo Plaintiffs") as and for their Complaint against Defendants identified on Schedule A ("Carrier Defendants") *in personam*, and as against M/V ONE APUS, IMO no. 9806079, including its engines, boilers, tackle, and other appurtenances, etc., *in rem*; and CHIDORI SHIP HOLDING LLC; JESSICA SHIP HOLDING S.A.; NYK SHIP MANAGEMENT PTE LTD.; OCEAN NETWORK EXPRESS PTE LTD.; HAPAG-LLOYD AKTIENGESELLCHAFT; YANG MING MARINE TRANSPORT CORP.; and HMM CO., LTD., *in personam* ("Vessel Defendants"), allege, upon personal knowledge as to their own acts, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1.    This Complaint is for loss of/damage to goods in common carriage by sea from several foreign ports to a port of United States of America, and is thus subject to the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §30701, *et seq.* (note), or in the alternative the Harter

1

Act, 46 USC §30701, *et seq*.  These claims come within this Court's Federal Question jurisdiction pursuant to 28 USC §1331.

2.  This Complaint also alleges breach of maritime contract and thereby comes within this Court's admiralty jurisdiction pursuant to 28 USC §1333, and asserts admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

3.  This Court has personal jurisdiction over the Carrier Defendants and the Vessel Defendants because they have offices in and/ or do business within the District.  This Court has *in rem* jurisdiction over M/V ONE APUS, IMO no. 9806079, including its engines, boilers, tackle, and other appurtenances, etc., *in rem*, because it is presently within the district or will be so while the action is pending.

4.  Venue is proper in this District because the Carrier Defendants and the Vessel Defendants are subject to personal jurisdiction in the District, because the subject contracts of carriage, service-level agreements, and/or other applicable contracts contain choice of forum clauses that call for or permit the jurisdiction of this Court, and because the Carrier Defendants and Vessel Defendants have waived all objections to venue in this District.

## THE PARTIES

5.  The Cargo Plaintiffs now and at all times material were corporations or other business entities duly organized and existing by virtue of law.  The Cargo Plaintiffs at all times material were the uninsured owners or the subrogated insurers of the hereinafter-described shipments of cargo.

6.  The Cargo Plaintiffs are informed and on that basis believe that the Carrier Defendants are now and at all times material were corporations or other business entities duly organized and existing by virtue of law and were common carriers and/or transportation

intermediaries engaged in the business of common carriage of goods for hire to, from and within the United States, and to, from and within this district.

7. The Cargo Plaintiffs are informed and on that basis believe that M/V ONE APUS, IMO no. 9806079, including its engines, boilers, tackle, and other appurtenances, etc., *in rem*, is an ocean-going containership carrying goods for hire between foreign ports and ports of the United States, and did engage in such common carriage of goods for hire in this instance, giving the Kennedys Plaintiffs a maritime lien over it. The Cargo Plaintiffs likewise are informed and on that basis believe that the other Vessel Defendants are now and at all times material were corporations or other business entities duly organized and existing by virtue of law and were common carriers and/or transportation intermediaries engaged in the business of common carriage of goods for hire to, from and within the United States, and to, from and within this district, and/or owning, chartering, operating and/or managing the M/V ONE APUS in the common carriage of goods for hire by sea to, from and within the United States, and to, from and within this district.

**FACTUAL BACKGROUND**

8. On or about the dates and at the places of receipt and/or the ports of loading stated in those bills of lading or waybills issued by Carrier Defendant and/or Vessel Defendants and listed in Schedule A, the shipments therein described were delivered to Carrier Defendants and Vessel Defendants as common carriers or otherwise. All of the shipments were tendered and delivered to the Carrier Defendants and/or the Vessel Defendants in good order and condition at foreign ports for transport to the Port of Long Beach, California, a port of the United States. The Carrier Defendants and/or the Vessel Defendants then and there accepted said shipments, and in consideration of agreed freight charges thereupon paid or agreed to be paid, the Carrier

Defendants and/or the Vessel Defendants agreed to transport said shipments to the Ports of Los Angeles / Long Beach, California, and/or onward to an inland destinations, and promised to deliver said shipments in like good order and condition at the final points of delivery as specified in said bills of lading/ waybills/ contracts of carriage and/or as required by operative law.

9. The Carrier Defendants and/or the Vessel Defendants and/or their agents issued clean bills of lading/ waybills/ contracts of carriage for the shipments listed in Schedule A, some particulars of which are stated therein, but which are more fully set out in the bills of lading/ waybills/ contracts of carriage themselves, which are equally available to the Carrier Defendants and the Vessel Defendants, as the Carrier Defendants and the Vessel Defendants issued the bills of lading/ waybills/ contracts of carriage. The shipments were thereafter loaded on board the containership M/V ONE APUS in good order and condition at the load ports reflected on the bills of lading/ waybills/ contracts of carriage.

10. On or about November 30, 2020, approximately 1800 containers broke free and went overboard into the Pacific Ocean, and many hundreds more were damaged, all in breach of the Carrier Defendants' and the Vessel Defendants' duties under the bills of lading/ waybills/ contracts of carriage and/or relevant law.

11. The vessel diverted to Kobe, Japan, arriving on or about December 8, 2020. It underwent significant repairs for four months. During this time, the Carrier Defendants and the Vessel Defendants removed many containers, including on information and belief the remaining containers and shipments covered under the Carrier Defendants' and the Vessel Defendants' bills of lading/ waybills/ contracts of carriage, and subjected them to further loss/ damage in transloading and handling as a result of the overboard casualty. The Carrier Defendants and the

Vessel Defendants refused to allow the Cargo Plaintiffs access to their shipments, and further failed to provide any material information regarding the condition of same.

12. The vessel sailed from Kobe to the Ports of Los Angeles/ Long Beach, California, on or about March 17, 2021, and said shipments that had not gone overboard were finally discharged at the Ports of Los Angeles/ Long Beach, California, on or about April 12, 2021, in bad order and condition, all in breach of the Carrier Defendants' and/or the Vessel Defendants' obligations under the bills of lading/ waybills/ contracts of carriage and/or relevant law.

13. The Cargo Plaintiffs are the real parties in interest, and are the owners of the claims set forth herein. Prior to the Carrier Defendants' and the Vessel Defendants' receipt of the shipments, issuance of bills of lading/ waybills/ contracts of carriage, or any loss thereto, the Cargo Plaintiffs either owned said shipments, or issued policies of insurance whereby they agreed to indemnify the owners of said shipments and their assigns against loss or damage to said shipments. The Cargo Plaintiffs that issued policies of insurance became legally and contractually obligated to pay their insureds for the cargo loss/ damage as a result of the aforesaid events, in the amounts reflected in Schedule A, in total in excess of USD$39,000,000.00, which claims the Cargo Plaintiffs adjusted and paid. By virtue of having made said payment(s), the Cargo Plaintiffs that issued policies of insurance have become contractually, legally and equitably subrogated to the rights and claims of their insureds, and/or have been assigned the rights to recovery for the cargo losses described, including recovery of any deductibles incurred or paid under the policies.

**FIRST CAUSE OF ACTION**
**(Damage to Cargo - COGSA)**

14. Plaintiff refers to and incorporates herein by reference paragraphs 1-13 as though fully set forth herein.

15. In November 2020 at various load ports in China as identified in the relevant bills of lading/ waybills/ contracts of carriage, the Carrier Defendants and the Vessel Defendants received various shipments of goods contained in numerous shipping containers and under contracts of carriage, namely the bills of lading/ waybills/ contracts of carriage identified in Schedule A, and others, and in return for good and valuable consideration, agreed to carry the shipments from China to destinations in the United States via the Ports of Los Angeles/ Long Beach, and thereafter deliver the shipments in the same good order, condition, and quantity as when received.

16. However, in breach of and in violation of said agreements and their duties as common carriers of goods by sea for hire, the Carrier Defendants and the Vessel Defendants did not deliver the shipments in the same good order, condition, and quantity as received. To the contrary, the Carrier Defendants and the Vessel Defendants either failed to deliver the shipments at all, where the shipments were lost overboard during the ocean carriage to Long Beach, or delivered the shipments in a damaged condition.

17. By reason of the Carrier Defendants' and the Vessel Defendants' failure to deliver the shipments in the same good order and condition as received, each defendant has caused a loss to the Cargo Plaintiffs in the amounts set forth in Schedule A, no part of which have been paid by any defendant, though duly demanded.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

18. Plaintiff refers to and incorporates herein by reference paragraphs 1-17 as though fully set forth herein. This cause of action is pleaded in the alternative.

19. The Carrier Defendants and the Vessel Defendants, under contracts of carriage set out in Schedule A, including without limitation bills of lading/ waybills/ contracts of carriage,

and in return for good and valuable consideration, agreed to transport and carry the shipments from ports in China to destinations in the United States via the Ports of Los Angeles/ Long Beach, California and there to deliver the shipments in the same good order, condition, and quantity as when received.

20. In breach of said contract, the Carrier Defendants and the Vessel Defendants did not deliver the shipments in the same good order, condition, and quantity as when received. To the contrary, the shipments were lost overboard and/or damaged during the ocean carriage.

21. By reason of the Carrier Defendants' and the Vessel Defendants' failure to deliver the shipments in the same good order and condition as received, each defendant has caused a loss to the Cargo Plaintiffs in the amounts set forth in Schedule A, no part of which have been paid by any defendant, though duly demanded.

## THIRD CAUSE OF ACTION
### (Bailment)

22. Plaintiff refers to and incorporates herein by reference paragraphs 1-21 as though fully set forth herein. This cause of action is plead in the alternative.

23. In receiving and arranging for the shipments of cargo, either by themselves or through their agents, the Carrier Defendants and the Vessel Defendants acted as bailees for hire, setting up a bailment as a matter of law. In breach of said bailment, the Carrier Defendants and the Vessel Defendants failed to safely deliver the shipments in the same good order and condition as when received. To the contrary, the shipments were never delivered or were delivered damaged.

24. By reason of the Carrier Defendants' and the Vessel Defendants' failure to deliver the shipments in the same good order and condition as received, each defendant has caused a loss

to the Cargo Plaintiffs in amounts set forth in Schedule A, no part of which have been paid by any defendant, though duly demanded.

## FOURTH CAUSE OF ACTION
### (Damage to Cargo – Harter Act, 46 U.S.C. § 30704)

25. Plaintiff refers to and incorporates herein by reference paragraphs 1-24 as though fully set forth herein.  This cause of action is pled in the alternative.

26. The Carrier Defendants and the Vessel Defendants, under contracts of carriage set out in Schedule A, including without limitation bills of lading/ waybills/ contracts of carriage, and in return for good and valuable consideration, agreed to transport and carry the shipments from ports in China to destinations in the United States via the Ports of Los Angeles/ Long Beach, California and there deliver the shipments in the same good order, condition, and quantity as when received.

27. Thereafter, in breach of and in violation of said agreements and their duties as common carriers of goods by sea for hire, the Carrier Defendants and the Vessel Defendants did not deliver the shipments that they received in the same good order, condition, and quantity. To the contrary, the Carrier Defendants and the Vessel Defendants either failed to deliver the shipments, or delivered the shipments in a damaged condition.

28. By reason of the Carrier Defendants' and the Vessel Defendants' failure to deliver the shipments in the same good order and condition as received, each defendant has caused a loss to the Cargo Plaintiffs in amounts set forth in Schedule A, no part of which have been paid by any defendant, though duly demanded.

/ / / / /

/ / / / /

/ / / / /

## FIFTH CAUSE OF ACTION
## GENERAL MARITIME LAW NEGLIGENCE

29. Plaintiff refers to and incorporates herein by reference paragraphs 1-28 as though fully set forth herein. This cause of action is pled in the alternative, to the extent that any of the Carrier Defendants or Vessel Defendants are not carriers or bailees as a matter of law.

30. The Carrier Defendants and the Vessel Defendants set out in Schedule A, and in return for good and valuable consideration, agreed to transport and carry the shipments from ports in China to destinations in the United States via the Ports of Los Angeles/ Long Beach, California and there deliver the shipments in the same good order, condition, and quantity as when received. Further to these agreements, the Carrier Defendants and the Vessel Defendants agreed to own and/or charter and/or operate and/or manage said vessel in a safe, nonnegligent, seaworthy and cargo-worthy manner.

31. Thereafter, in breach of and in violation of said agreements and their obligations to own and/or operate and/or charter and/or manage the vessel in a safe, nonnegligent, seaworthy and cargo-worthy manner, the Carrier Defendants and the Vessel Defendants negligently owned and/or operated and/or chartered and/or managed said vessel, resulting in either a complete failure to deliver some of the shipments, or in delivering other of the shipments in a damaged condition.

32. By reason of the Carrier Defendants' and the Vessel Defendants' negligence, each defendant has caused a loss to the Cargo Plaintiffs in amounts set forth in Schedule A, no part of which have been paid by any defendant, though duly demanded.

**WHEREFORE**, the Cargo Plaintiffs identified on Schedule A pray for relief as follows:

A. That this Complaint be deemed good and sufficient;

B.     That process in due form of law, according to the rules and practices of this Honorable Court in causes of admiralty and maritime jurisdiction, issue against the M/V ONE APUS, its cargo, apparel, tackle, and appurtenances, etc., *in rem*, by way of arrest pursuant to Rule C of the Supplemental Rules For Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, and that all persons claiming interest in said vessel be required to appear and to answer under oath, all and singular the matters aforesaid;

C.     That notice of the commencement of this suit in a manner approved by this Honorable Court be given to the owner, custodian, master, or other ranking officer of M/V ONE APUS, and to any person, firm, or corporation that has recorded a notice of claim of any undischarged lien upon the Vessel;

D.     That under Rule C(3) of the Supplemental Rules For Certain Admiralty and Maritime Claims, this Court enter an order authorizing a warrant for the arrest of the Vessel, its cargo, apparel, tackle, and appurtenances, etc., *in rem*;

E.     That a warrant issue forthwith for the arrest of the Vessel, its cargo, apparel, tackle, and appurtenances, etc., in rem;

F.     That the Vessel be sold and the proceeds of the Vessel be applied to costs and expenses associated with this action, and then applied to payment of the amounts owing, plus interest, to the Cargo Plaintiffs;

G.     That this Court decree payment by each defendant to the Cargo Plaintiffs in an amount to be proven at trial, together with contractual attorneys' fees, prejudgment interest thereon and costs of suit herein; and

/ / / / /

/ / / / /

H.      That The Continental Insurance Company and the other Cargo Plaintiffs identified on Schedule A have such other and further relief to which in law and justice they may be entitled to receive.

Dated: September 27, 2022.

>Respectfully submitted,
>KENNEDYS CMK LLP
>
>/s/ *Jonathan W. Thames*
>Jonathan W. Thames
>Motion for admission *Pro Hac Vice* forthcoming
>101 California Street, Suite 1225
>San Francisco, California 94111
>(415)323-4460
>jonathan.thames@kennedyslaw.com
>*Attorneys for Cargo Plaintiffs*
>
>/s/ *Frank Jordan*
>Frank Jordan (FJ 1923)
>570 Lexington Avenue
>New York, New York 10022
>(212) 252-0004
>Frank.jordan@kennedyslaw.com
>*Attorneys for Cargo Plaintiffs*

PURSUANT TO RULE E(3)(b) OF THE SUPPLEMENTAL RULES FOR CERTAIN ADMIRALTY AND MARITIME CLAIMS, <u>PLEASE HOLD PROCESS *IN REM* IN ABEYANCE.</u>