**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | 1:22-MD-3028-PAE |
| ONE APUS CONTAINER SHIP INCINDENT ON NOVEMBER 30, 2020 | Hon. Paul A. Engelmayer |
| This Document Relates to: C.A. 1:22-cv-08233 | **MCL-MULTI CONTAINER LINE INC., DBA TRANSPAC CARGOLINE'S ANSWER TO COMPLAINT AND CROSSCLAIM** |
| MITSUI SUMITOMO INSURANCE CO. OF AMERICA, *et al.,* | |
| Plaintiffs, | |
| v. | |
| *M/V ONE APUS*, et al., | |
| Defendants. | |
| MCL-MULTI CONTAINER LINE INC., DBA TRANSPAC CARGOLINE*,* | |
| Cross-Claimant, | |
| v. | |
| *M/V ONE APUS*, *in rem*, CHIDORI SHIP HOLDING LLC; JESSICA SHIP HOLDING S.A.; NYK SHIPMANAGEMENT PTE. LTD.; BENKEL INTERNATIONAL PTE LTD; HMM CO., LTD., YANG MING MARINE TRANSPORT CORP.; and ROES 1-10, *et al.*, | |
| Cross-Defendants. | |

Defendant MCL-Multi Container Line Inc., dba Transpac CargoLine ("Transpac"), by and through its undersigned attorneys, for its Answer to the Complaint, states as follows.

## JURISDICTION AND VENUE

1.  Transpac is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 1, 2, 3, 4 and 5, and on that basis denies them.

2.  In response to paragraph 6, Transpac admits that it is registered as corporation and licensed as a non-vessel operating common carrier ("NVOCC") with the Federal Maritime Commission. Transpac is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 6 and on that basis denies them.

3.  Transpac is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 and on that basis denies them.

## FACTUAL BACKGROUND

4.  In response to paragraph 8, Transpac admits that it issued house bills of lading numbers SGHCHI2011001, SGCHI2011002 and JKLAX2010005 ("Transpac BLs), for containerized goods to be carried from Singapore and Indonesia to the Port of Long Beach and onward to inland destination subject to the terms and conditions of the Transpac BLs. Transpac further admits that in its capacity as an NVOCC it arranged transport of the cargo from Singapore and Indonesia to the United States, via the Port of Long Beach, with Benkel International Pte. Ltd. ("Benkel") (who issued bills of lading SELAX20110329-03 and SELAS20110329-05, hereafter, "Benkel BLs"), and Yang Ming Marine Transport Corp. ("YM") (who issued bill of lading WMLUW425908601, hereafter "YM BL"), and HMM Co. Ltd. ("HMM") (who issued bills of lading with numbers presently unknown to Transpac, hereafter "HMM BLs"). Transpac is without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 8 and on that basis denies them.

5.   In response to paragraph 9, Transpac admits that it received the containers identified in the Transpac BLs subject to the terms and conditions of said bills of lading, that in its capacity as an NVOCC it arranged transport of the containers by Benkel, YM and HMM from Asia to the United States via the Port of Long Beach, and that Benkel, YM and HMM issued the Benkel, YM and HMM BLs. Transpac further admits that the containers were loaded aboard the Vessel for transport to the Port of Long Beach. Transpac is without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 9 and on that basis denies them.

6.   The allegations in paragraph 10 contain legal conclusions to which no response is required. To the extent a response is required, Transpac admits, on information and belief, that on or about November 30th 2020, while the Vessel was underway to the Port of Long Beach more than 1800 containers went overboard or were damaged. Transpac is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 10 and on that basis denies them.

7.   Transpac is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11 and on that basis denies them.

8.   The allegations in paragraph 12 contain legal conclusions to which no response is required. To the extent a response is required, Transpac is without knowledge or information sufficient to form a belief as to the truth of those allegations and on that basis denies them.

9.   Transpac is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 and on that basis denies them.

**FIRST CAUSE OF ACTION**
**(Damage to Cargo – COGSA)**

10.  In response to paragraph 14, Transpac re-alleges and incorporates its responses to paragraphs 1 through 13 as though fully set forth herein.

11. In response to paragraph 15, Transpac admits that it received the containers identified in the Transpac BLs subject to the terms and conditions of said bills of lading, that in its capacity as an NVOCC it arranged transport of the containers by Benkel, YM and HMM from Asia to the United States via the Port of Long Beach, and that Benkel, YM and HMM issued the Benkel, YM and HMM BLs. Transpac is without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 15 and on that basis denies them.

12.  The allegations in paragraph 16 contain legal conclusions to which no response is required. To the extent a response is required, and responding for itself, Transpac denies the allegations in paragraph 16.

13.  Responding to allegations of paragraph 17 that relate to Transpac, Transpac admits that it did not pay any sum to a Plaintiff for amounts alleged and denies all the remaining allegations in paragraph 17.

**SECOND CAUSE OF ACTION**
**(Breach of Contract)**

14.  Responding to allegations of paragraph 18, Transpac re-alleges and incorporates its responses to paragraphs 1 through 17 as though fully set forth herein.

15. In response to paragraph 19, Transpac admits that it received the containers identified in the Transpac BLs subject to the terms and conditions of said bills of lading, that in its capacity as an NVOCC it arranged transport of the containers by Benkel, YM and HMM from Asia to the United States via the Port of Long Beach, and that Benkel, YM and HMM issued the Benkel, YM

and HMM BLs. Transpac is without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 19 and on that basis denies them.

16. The allegations in paragraph 20 contain legal conclusions to which no response is required. To the extent a response is required, and responding for itself, Transpac denies the allegations in paragraph 20.

17. Responding to allegations of paragraph 21 that relate to Transpac, Transpac admits that it did not pay any sum to a Plaintiff for amounts alleged and denies all the remaining allegations in paragraph 21.

**THIRD CAUSE OF ACTION**
**(Bailment)**

18. Responding to allegations of paragraph 22, Transpac re-alleges and incorporates its responses to paragraphs 1 through 21 as though fully set forth herein.

19. Transpac denies the allegations of paragraph 23 as they pertain to Transpac. As to the remaining allegations of paragraph 23, Transpac is without sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies them.

20. Responding to allegations of paragraph 24 that relate to Transpac, Transpac admits that it did not pay any sum to a Plaintiff for amounts alleged and denies all the remaining allegations in paragraph 24.

**FOURTH CAUSE OF ACTION**
**(Damage to Cargo – Harter Act, 46 U.S.C. §30704)**

21. Responding to allegations of paragraph 25, Transpac re-alleges and incorporates its responses to paragraphs 1 through 24 as though fully set forth herein.

22. In response to paragraph 26, Transpac admits that it received the containers identified in the Transpac BLs subject to the terms and conditions of said bills of lading, that in its capacity as

an NVOCC it arranged transport of the containers by Benkel, YM and HMM from Asia to the United States via the Port of Long Beach, and that Benkel, YM and HMM issued the Benkel, YM and HMM BLs. Transpac is without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 26 and on that basis denies them.

23.   The allegations in paragraph 27 contain legal conclusions to which no response is required. To the extent a response is required, and responding for itself, Transpac denies the allegations in paragraph 27.

24.   Responding to allegations of paragraph 28 that relate to Transpac, Transpac admits that it did not pay any sum to a Plaintiff for amounts alleged and denies all the remaining allegations in paragraph 28.

## FIFTH CAUSE OF ACTION
### (General Maritime Law Negligence)

25.   Responding to allegations of paragraph 29, Transpac re-alleges and incorporates its responses to paragraphs 1 through 28 as though fully set forth herein.

26.   In response to paragraph 30, Transpac admits that it received the containers identified in the Transpac BLs subject to the terms and conditions of said bills of lading, that in its capacity as an NVOCC it arranged transport of the containers by Benkel, YM and HMM from Asia to the United States via the Port of Long Beach, and that Benkel, YM and HMM issued the Benkel, YM and HMM BLs. Transpac denies that it agreed to own, charter, operate and/or manage the Vessel. Transpac is without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 26 and on that basis denies them.

27.   In response to paragraph 31, and responding for itself, Transpac denies the allegations of paragraph 31.

28.   Responding to allegations of paragraph 32 that relate to Transpac, Transpac admits that it did not pay any sum to a Plaintiff for amounts alleged and denies all the remaining allegations in paragraph 32.

## PRAYER FOR RELIEF

Transpac denies that Plaintiffs are entitled to the relief prayed for against Transpac and requests that the Court dismiss the Complaint and/or enter judgment against Plaintiffs and in favor of Transpac and issue all other relief it deems just and proper.

## AFFIRMATIVE DEFENSES

Transpac asserts the following affirmative defenses based on information presently available. By stating the affirmative defenses set forth below, Transpac neither agrees nor concedes it has the burden of proof or the burden of persuasion on such issues. Transpac reserves the right to assert such further and other affirmative defenses as may hereinafter be revealed through discovery or otherwise.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

1.   The Complaint fails to state facts sufficient to constitute a claim upon which relief can be granted against Transpac.

## SECOND AFFIRMATIVE DEFENSE
### (COGSA)

2.   Transpac denies it is liable or responsible for the matters alleged in the Complaint; however, if Transpac has any liability or responsibility for said matters, it is exonerated from such liability or its liability is limited by the United States Carriage of Goods by Sea Act ("COGSA), 46 U.S.C. §30701.

### THIRD AFFIRMATIVE DEFENSE
### ($500 Package Limitation)

3.   Pursuant to COGSA, the terms of the terms and condition of any bill of lading or contract of carriage applicable to the shipments (including Transpac's bills of lading), and/or any other applicable law, Tranpac's liability, if any, if limited to $500 per package or customary freight unit.

### FOURTH AFFIRMATIVE DEFENSE
### (Bills of lading)

4.   Transpac denies it is liable or responsible for the matters alleged in the Complaint; however, if Transpac has any liability or responsibility for said matters, said liability or responsibility is limited by and subject to the terms and condition of any bill of lading or contract of carriage applicable to the shipments (including Transpac's bills of lading), and Transpac is entitled to assert any limitation of liability provision appearing therein. Transpac claims the benefit of any other party's bill of lading, terms and conditions of service, tariff, or other contract of carriage applicable to the shipments.

### FIFTH AFFIRMATIVE DEFENSE
### (Shipper/Consignee/Owner's Fault)

5.   Transpac is not liable for the loss or damage alleged in the Complaint because the loss or damage was caused by the fault of shippers, consignees and/or owners of the cargo, and not by Transpac.

## SIXTH AFFIRMATIVE DEFENSE
### (Fault of Others; Supervening/Intervening Cause)

6.   Any act or omission by Transpac was not the cause of the loss or damage alleged in the Complaint but was superseded by the acts and omissions of other parties and/or third parties, which were independent, intervening, and proximate cause of any damages complained of by Plaintiffs.

## SEVENTH AFFIRMATIVE DEFENSE
### (Comparative Negligence)

7.   Pursuant to the principles of comparative negligence if Transpac is found liable for the matters alleged in the Complaint its liability must be reduced by the percentage of fault attributable to Plaintiffs, other parties in the action and/or third parties.

## EIGHT AFFIRMATIVE DEFENSE
### (Failure to Join Indispensable Parties)

8.   Plaintiffs failed to join indispensable parties without which complete relief cannot be granted.

## NINTH AFFIRMATIVE DEFENSE
### (Perils of the Sea)

9.   The loss or damage alleged in the Complaint was caused by perils, dangers or accidents of the sea which absolve Transpac from liability under COGSA, the general maritime law of the United States, and/or the bills of lading and contracts of carriage applicable to the shipment.

## TENTH AFFIRMATIVE DEFENSE
### (Mitigation)

10.   Complaint, and each alleged claim for relief therein, is barred because Plaintiffs failed to take reasonable steps to mitigate the damages alleged.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Waiver/Estoppel/Unclean Hands)

11.    The Complaint, and each claim therein, is barred, in whole or in part, by the doctrines of waiver, estoppel and unclean hands.

## TWELFTH AFFIRMATIVE DEFENSE
### (Indemnity and Contribution)

12.    At all times alleged in the Complaint, persons other than Transpac were negligent, reckless or at fault with respect to events and occurrences alleged in the Complaint; the negligence, recklessness or fault of said persons was the proximate cause of any damage or injury, if any, suffered by Plaintiffs, and Transpac requests a declaration of indemnification and contribution as to all other parties or persons in accordance with the apportionment of fault.

**WHEREFORE**, Transpac prays that Plaintiffs take nothing by its Complaint against Transpac; that judgment be entered against Plaintiffs and in favor of Transpac; and that Transpac be awarded its costs of suit incurred to defend this action and all other relief the Court deems just and proper.

## CROSSCLAIM BY MCL-MULTI CONTAINER LINE INC.

Defendant and Cross-Claimant MCL-MULTI CONTAINER LINE INC., dba Transpac CargoLine ("Transpac"), for its Crossclaim against Defendants/Cross-Defendants M/V ON APUS, *in rem*, CHIDORI SHIP HOLDING LLC, JESSICA SHIP HOLDING S.A., NYK SHIPMANAGEMENT PTE. LTD., BENKEL INTERNATIONAL PTE. LTD., YANG MING MARINE TRANSPORT CORP., and HMM CO. LTD., alleges as follows:

### JURISDICTION, PARTIES AND VENUE

1.   This Crossclaim contains a cause of action for damage to cargo and breach of duties arising under the Carriage of Goods by Sea Act, 46 U.S.C. 46 U.S.C. §30701 et seq. ("COGSA") and is within the jurisdiction of this Court pursuant to 28 U.S.C. §1331 or claims pendent or ancillary to the same. The Court also has admiralty jurisdiction pursuant to 28 U.S.C. §1333. Alternatively, this Court has supplemental jurisdiction over this Crossclaim because it arises out of the transactions and occurrences that are the subject matter of the Complaint filed in Case No. 22-cv-08233 by plaintiffs Mitsui Sumitomo Insurance Company of America ("Plaintiffs"), and Transpac alleges that Cross-Defendants, and each of them, are or may be liable for all or part of the claims asserted against Transpac in the Complaint. Fed. R. Civ. P. 13; 28 U.S.C. 1367(a).

2.   Venue is proper in this District because the vessel defendants, as they are identified in the Complaint, are subject to personal jurisdiction in this District, are subject to contracts of carriage, service legal agreements and/or other applicable contracts which contain choice of forum clauses that call for or permit suit in this District, and/or have waived objection to venue in this District.

3.   At all relevant times mentioned herein, Transpac was and is a corporation existing under the laws of the State of Delaware with its principal place of business located at 2801 Centerville Road, First Floor, PMB 335, Wilmington, DE 19808, and engaged in the business of transporting cargo as

federally licensed non-vessel operating common carrier.

4. At all relevant times mentioned herein, Defendant/Cross-Claimant, CHIDORI SHIPHOLDING LLC ("Chidori"), was and is a foreign corporation registered in Japan with its principal place of business at 2-2-1 Kyobashi, Chuo-ku, Tokyo, Japan, and the owner of the M/V ONE APUS.

5. At all relevant times mentioned herein, the *in rem* Defendant/Cross-Defendant M/V ONE APUS (the "Vessel"), was and is a commercial containership registered in Japan with Official Number 143426 and IMO No. 9806079, owned by Chidori, and engaged in transporting goods by sea for hire.

6. At all relevant times mentioned herein, Defendant/Cross-Defendant, JESSICA SHIP HOLDING S.A. ("Jessica"), was and is a foreign corporation registered in the Republic of Panama with its principal place of business at 15th Floor, Banco General Tower, Aquilina De La Guardia Street, Marbella, Panama City, Republic of Panama, and bareboat charterer of the Vessel.

7. At all relevant times mentioned herein, Defendant/Cross-Defendant, NYK SHIPMANAGEMENT PTE. LTD. ("NYK"), was and is a foreign corporation registered in Singapore with its principal place of business at 1 Harbourfront Place, #15-01 Harbour Front PlaceTower One, Singapore, 098633, and managed the Vessel.

8. At all relevant times mentioned herein, Defendant/Cross-Defendant BENKEL INTERNATIONAL PTE. LTD. ("Benkel"), was, on information and belief, a foreign company registered in Singapore with its principal place of business at No. 2, Bukit Merah Central, #05-08, Singapore 159835. On information and belief, Benkel is a vessel operating common carrier registered with the Federal Maritime Commission that regularly engages in the business of transporting ocean born cargo in the foreign commerce of the United States, including regular shipments to, from and

through this judicial district.

9. At all relevant times mentioned herein, Defendant/Cross-Defendant YANG MING MARINE TRANSPORT CORP. ("YM"), was and is a foreign corporation registered in Taiwan with its principal place of business at No. 271, Ming De 1st Road, Cidu District, Keelung 20646. YM is a vessel operating common carrier registered with the Federal Maritime Commission that regularly engages in the business of transporting ocean born cargo in the foreign commerce of the United States, including regular shipments to, from and through this judicial district, and conducts administrative operations in the United States via its general agent Yang Ming (America) Corp.

10. At all relevant times mentioned herein Defendant/Cross-Defendant HMM CO., LTD., formerly known as Hyundai Merchant Marine Co., Ltd. ("HMM"), was and is a foreign limited liability company registered in Republic of Korea with its principal place of business in the Republic of Korea. HMM is a vessel operating common carrier registered with the Federal Maritime Commission that regularly engages in the business of transporting ocean born cargo in the foreign commerce of the United States, including regular shipments to, from and through this judicial district, and conducts administrative operations in the United States via its general agent HMM (America), Inc.

11. On information and belief, at all times relevant to this action, YM, HMM and ONE had a Vessel Sharing Agreement and were slot-charterers of the Vessel.

12. Transpac is informed and believes, and on that basis alleges, that each cross-defendant was, at all times mentioned, the agent, principal, servant, employee or contractor for the other cross-defendants.

## GENERAL ALLEGATIONS

13. Transpac is an ocean transportation intermediary and a licensed non-vessel operating

common carrier ("NVOCC") who facilitates the transport of cargo for its clients, including from Asia to the California. As an NVOCC, Transpac arranges and outsources the transport of clients' cargo, by land or ocean carriage, by other NVOCCs and vessel operating common carriers ("VOCCs").

14.   On or about November 2020, Transpac issued lading nos. SGHCHI2011001, SGCHI2011002 and JKLAX2010005 ("Transpac BLs") to facilitate the transport of containerized cargo from Singapore and Indonesia to the United States via the Port of Long Beach, California (the "Shipments"). True and correct copies of the Transpac Bills of Lading are attached as **Exhibit A**.

15.   On or about the same date, Transpac arranged the land transport and ocean carriage of the Shipments. Specifically, Transpac and/or its agents contracted with Benkel, an NVOCC, and with YM and HMM, VOCCs, to provide the actual carriage of the Shipments. Benkel issued bills of lading SELAX20110329-03 and SELAS20110329-05 ("Benkel BLs"), YM issued bill of lading WMLUW425908601 ("YM BL") and HMM issued bills of lading with numbers presently unknown to Transpac ("HMM BLs") for the Shipments.

16.   On or about November 6th 2020, the Shipments were tendered to Cross-Defendants, or those acting on their behalf, at the port of loading and loaded aboard the Vessel for ocean carriage to the Port of Long Beach, California. The Shipments were in apparent good order and condition when tendered to Cross-Defendants.

17.   Cross-Defendants, or those acting on their behalf, accepted fees and charges to carry the Shipments from the place of receipt at the ports of loading to the port of discharge (Long Beach, California), and to provide transportation-related services including, but not limited to, the receipt, loading, stowage, containerization, and ocean carriage of the Shipments.

18.   On information and belief, on or about November 30th 2020, while enroute to Long Beach, the Vessel encountered severe weather, resulting in numerous containers lost overboard and

numerous others collapsed on deck; the Vessel diverted to Kobe, Japan where the collapsed cargo was apparently discharged.

19.   On information and belief, the Shipments covered by the Transpac BLs, and by the corresponding Benkel, YM and HMM BLs, were lost overboard or damaged ("Incident").

20.   On information and belief, Plaintiffs listed in the Complaint issued policies of insurance covering certain of the cargo loaded onto the Vessel and subsequently lost or damaged, including the Shipments.

21.   On September 28th 2022, plaintiffs, namely Continental Insurance Company and Roanoke-Munich Re Syndicate Ltd. ("Plaintiffs"), filed the Complaint and commenced this action against Transpac and others, alleging that Plaintiffs paid cargo owners for the loss of the cargo, that they are contractually and/or equitably subrogated to owners' rights and claims, and seeking damages for the cargo loss.

22.   The Complaint alleges combined damages of $445,399 against Transpac on the Shipments covered by the Transpac BLs. Transpac denies liability for damages on the Shipments.

23.   Transpac is informed and believes, and thereon alleges, that Roes 1 through 10 are each responsible in some manner for the events, and include owners, despondent owners, charterers, sub-charterers, and VOCCs at the time of the Vessel's voyage, and/or issuers of bills of lading covering the transportation of the cargo that is the subject of this action. The true names of the Roe defendants are presently unknown to Transpac and are therefore sued in those fictitious names. Transpac will amend this Crossclaim to substitute their true names when they are determined.

//

//

//

**FIRST CLAIM FOR RELIEF**
**Breach of Duties under COGSA and/or General Maritime Law**
**(Against Vessel, Chidori, Jessica, NYK, YM, HMM and Roes 1-10)**

24.   Transpac realleges and incorporates the allegations of paragraphs 1 through 23 as though fully set forth herein.

25.   The Carriage of Goods by Sea Act, 46 U.S.C. §30701 ("COGSA") sets out, among other things, the duties of ocean carriers in their transport of goods. Similarly, the general maritime law of the United States imposes a duty on ocean carriers to, safely and prudently, load, stow secure, carry and deliver the Shipments in the same good order, condition, and quantity as when received by the carriers and/or the Vessel.

26.   Vessel, Chidori, Jessica, NYK, YM, HMM and Roes 1-10, or those acting on their behalf, loaded and stowed the containerized Shipments on the Vessel and issued clean bills of lading for the cargo.

27.   During the Vessel's voyage across the Pacific Ocean to the United States and while aboard the Vessel, the containerized Shipments either went overboard and were lost at sea or suffered damage during the voyage, rendering the Shipments without value. As a result, Vessel, Chidori, Jessica, NYK, YM, HMM and Roes 1 through 10 did not deliver the Cargo in the same good order, condition and quantity as they undertook to do when they the Shipments were tendered to them.

28.   The loss of the Shipments was caused by the breach of duties under COGSA and general maritime law by Vessel, Chidori, Jessica, NYK, YM, HMM and Roes 1 through 10, and their negligent failure to properly load, stow, carry, protect, store, care for, and deliver the Shipments, and/or the unseaworthiness of the Vessel and its appurtenances, in which the Shipments were loaded.

29.   As a proximate result of those actions or omissions or both, Transpac has been damaged in an approximate of $445,399, or other sum to be proven at trial, plus interest, attorney's fees, and

costs.

## SECOND CLAIM FOR RELIEF
### Equitable Indemnity
### (Against all Cross-Defendants)

30.   Transpac realleges and incorporates the allegations of paragraphs 1 through 23 as though fully set forth herein.

31.   In the Complaint, Plaintiffs assert claims and seek damage from Transpac's alleged breach of duties under COGSA, the Transpac Bills of Lading, and the Harter Act (46 U.S.C. §30704), as well as a claim for bailment, alleging Transpac failed to deliver the Shipments or delivered the Shipments in damaged condition.

32.   Transpac denies all allegations against it, and specifically denies liability for loss of or damage to the Shipments. However, in the event Transpac is found to be liable or responsible for any damages alleged in the Complaint, such liability will have been brought about, and caused, in whole or in part, by the conduct, actions, omissions and/or responsibility of Cross-Defendants, and not because of any act, omission or responsibility of Transpac.

33.   If Plaintiffs recover in any amount against Transpac as alleged in the Complaint, then Transpac will be damaged and is entitled to indemnity pursuant to common law and equitable principles from Cross-Defendants. To the extent Transpac participated in the acts and/or omissions and/or duties as alleged in the Complaint, which is denied, the wrongful acts of Transpac were passive, whereas the wrongful acts of Cross-Defendants were active, and on that basis Transpac is entitled to indemnification pursuant to common law equitable principles in the event judgment is awarded against it and in favor of Plaintiffs.

34.   Accordingly, if Transpac is held liable for all or any part of the claims asserted against it, Transpac would be entitled to full or partial equitable indemnification by Cross-Defendants, and each

of them, in proportion to their share of liability. In addition, since Transpac has been compelled to defend against the Complaint and to prosecute this Crossclaim, Transpac should be entitled to recover its attorney's fees and costs from Cross-Defendants.

**THIRD CAUSE OF ACTION**
**Contribution**
**(Against all Cross-Defendants)**

35. Transpac realleges and incorporates the allegations of paragraphs 1 through 23 as though fully set forth herein.

36. Due to Cross-Defendants' conduct, Transpac is now faced with a loss for which, in good conscience, equity, and justice, Transpac should not be held responsible.

37. For the reasons alleged above, if any Plaintiff recovers against Transpac, then Transpac is entitled to contribution from Cross-Defendants, and each of them, to the extent Cross-Defendants' fault, negligence, gross-negligence or other actionable conduct contributed to the liability or damages incurred by Transpac. In addition, since Transpac has been compelled to defend the Complaint and to prosecute this Crossclaim, Transpac should be entitled to recover its attorney's fees and costs from Cross-Defendants.

**WHEREFORE**, Transpac prays judgment against Cross-Defendants, jointly and severally, as follows:

On the First Cause of Action:

1.  For compensatory damages in the amount of $445,399 or according to proof at trial.

On the Second and Third Causes of Action:

2.  For indemnity and contribution on all or part of the damages awarded against Transpac, if any, in an amount to be proven at trial.

<u>On all Causes of Action:</u>

3. For attorney's fees and costs, as allowed by law or contract, which Transpac incurs to defend against the Complaint and to prosecute the Crossclaim;

4. For pre-judgment and post-judgment interest as allowed by law; and

5. For such other relief as the Court deems just and proper.

Dated:  January 30, 2023                     Respectfully submitted,


/s/ *Neil B. Klein*
Neil B. Klein, CA Bar No. 142734
*Pro hac vice motion forthcoming*
neilk@mckassonklein.com
McKASSON & KLEIN LLP
18401 Von Karman Ave., Suite 330
Irvine, CA 92612
P:  (949) 724-0200
F:  (949) 724-0201
Attorneys for Defendant/Cross-Claimant MCL-Multi Container Line Inc., dba Transpac CargoLine


/s/ *Edward W. Floyd*
Edward W. Floyd
ed.floyd@zeilerfloydzad.com
ZEILER FLOYD ZADKOVICH (US) LLP
33 East 33rd Street, Suite 905
New York, NY 10016
P:  (917) 999-6914
Eva-Maria Mayer
eva.mayer@zeilerfloydzad.com
ZEILER FLOYD ZADKOVICH (US) LLP
33 East 33rd Street, Suite 905
New York, NY 10016
P:  (617) 943-7957
Local Counsel for Defendant/Cross-Claimant MCL-Multi Container Line Inc., dba Transpac CargoLine

**EXHIBIT A**



**Consignor**
MEMJET LTD C/O TECHNOCOM SYSTEMS SDN BHD
NO. 2, JALAN KEMPAS 5/2
TAMPOI, JOHOR BAHRU 81200
MALAYSIA

**Consignee**
ASTRO MACHINE CORPORATION
630 LIVELY BLVD
ELK GROVE VILLAGE IL 60007
UNITED STATES

**BILL OF LADING**

**FOR COMBINED TRANSPORT
OR PORT TO PORT SHIPMENT**

**Notify Address**
SAME AS CONSIGNEE

**B/L No.**
SGCHI2011001

**MCL - MuLti Container Line Inc.
d.b.a. Transpac CargoLine
2711 Centerville Rd., Ste. 300, PMB 335
Wilmington, DE 19808 - U.S.A.
FMC #017837N**

| Precarriage by | Place of receipt* |
|---|---|
| | SINGAPORE |

Subject to the Standard Conditions printed overleaf

| Ocean Vessel | Port of loading |
|---|---|
| ONE APUS   006E | SINGAPORE |

| Port of discharge | Place of delivery* | Freight payable at | No. of orig. B/L |
|---|---|---|---|
| LONG BEACH, CA | CHICAGO, IL | DESTINATION | ZERO (0) |

| Marks and nos | Number and kind of packages | Description of goods | Gross weight kg | Measurements |
|---|---|---|---|---|
| | 100 CARTONS (CFS-CFS) | | | 909.00   12.247 (Kg)        (CBM) |
| ASTRO MACHINE CORPORATION 630 LIVELY BLVD ELK GROVE VILLAGE IL 60007 UNITED STATES | | 100 CARTONS ON 6 PALLETS STC:- PRINTER PARTS MEMJET INVOICE NO: 1200020735 HS CODE: 844399 AMS HBL: SGCHI2011001 AMS SCAC: MCLM | | *FREIGHT COLLECT* SHIPPED ON BOARD 6th Nov, 2020 |

Total in Word : ONE HUNDRED (100) CARTONS ONLY

-Container\Size\Seal No.------------Qty-Unit----------------------Status-----WTG(KG)--(CBM)-
HMMU9017175\LCL\HMM191939345       100 CARTONS                    CFS-CFS    909.00 12.247

COPY NON NEGOTIABLE

**ACCORDING TO CONSIGNORS DECLARATION**

*If filled in shipment will be treated as combined transport

| Container No. | Seal No. | Declared value (see clause 6.4.3 overleaf) |
|---|---|---|

Received and shipped in apparent good order and condition, unless otherwise noted herein. The goods and instructions are accepted and dealt with subject to the standard conditions printed overleaf and to which the merchant agrees by accepting this combined transport bill of lading.

One of these combined transport bills of lading must be surrended in exchange for the goods. In witness whereof original combined transport bills of lading all of this tenor and date have been signed in the number stated above, one of which being accomplished, the other(s) to be void.

| For release of the goods apply to: | Special remarks: |
|---|---|
| RADIANT GLOBAL LOGISTICS 1150 AVIATION BLVD HEBRON, KY 41048  Tel : 859 371 6444 Fax : | |
| | Place and date of issue: SINGAPORE 6th Nov, 2020 |

| Freight and charges: | As agent for the carrier |
|---|---|
| * FREIGHT AS ARRANGE * | M+R FORWARDING PTE LTD  AS AN AGENT FOR OR ON BEHALF OF THE CARRIER |

**Consignor**
MEMJET LTD C/O VIPCOLOR TECHNOLOGIES PTE LTD
5006 ANG MO KIO AVE 5
#05-01/12 TECHPLACE II
SINGAPORE 569873



**Consignee**
ASTRO MACHINE CORPORATION
630 LIVELY BLVD
ELK GROVE VILLAGE IL 60007
UNITED STATES

## BILL OF LADING

**FOR COMBINED TRANSPORT
OR PORT TO PORT SHIPMENT**

**Notify Address**
SAME AS CONSIGNEE

**B/L No.**
SGCHI2011002

**MCL - MuLti Container Line Inc.
d.b.a. Transpac CargoLine
2711 Centerville Rd., Ste. 300, PMB 335
Wilmington, DE 19808 - U.S.A.
FMC #017837N**

| | | |
|---|---|---|
| **Precarriage by** | **Place of receipt*** | |
| | SINGAPORE | |

Subject to the Standard Conditions printed overleaf

| **Ocean Vessel** | **Port of loading** |
|---|---|
| ONE APUS  006E | SINGAPORE |

| **Port of discharge** | **Place of delivery*** | **Freight payable at** | **No. of orig. B/L** |
|---|---|---|---|
| LONG BEACH, CA | CHICAGO, IL | DESTINATION | ZERO (0) |

| **Marks and nos** | **Number and kind of packages** | **Description of goods** | **Gross weight kg** | **Measurements** |
|---|---|---|---|---|
| | 135 CARTONS (CFS-CFS) | | 1,347.00 (Kg) | 4.853 (CBM) |
| | | | | *FREIGHT COLLECT* |
| | FULL PARTICULARS AS PER ATTACHED SHEET | | | |
| | | | | SHIPPED ON BOARD 6th Nov, 2020 |

Total in Word : ONE HUNDRED AND THIRTY FIVE (135) CARTONS ONLY

```
-Container\Size\Seal No.-------------Qty-Unit-----------------------Status-----WTG(KG)--(CBM)-
HMMU9017175\LCL\HMM191939345         135 CARTONS                    CFS-CFS    1347.00  4.853
```

COPY NON NEGOTIABLE

**ACCORDING TO CONSIGNORS DECLARATION**

*If filled in shipment will be treated as combined transport

| **Container No.** | **Seal No.** | **Declared value (see clause 6.4.3 overleaf)** |
|---|---|---|
| | | |

Received and shipped in apparent good order and condition, unless otherwise noted herein. The goods and instructions are accepted and dealt with subject to the standard conditions printed overleaf and to which the merchant agrees by accepting this combined transport bill of lading.

One of these combined transport bills of lading must be surrended in exchange for the goods. In witness whereof original combined transport bills of lading all of this tenor and date have been signed in the number stated above, one of which being accomplished, the other(s) to be void.

| **For release of the goods apply to:** | **Special remarks:** |
|---|---|
| RADIANT GLOBAL LOGISTICS
1150 AVIATION BLVD
HEBRON, KY 41048

Tel : 859 371 6444 Fax : | |
| | **Place and date of issue:**
SINGAPORE 6th Nov, 2020 |
| **Freight and charges:**
* FREIGHT AS ARRANGE * | **As agent for the carrier**
M+R FORWARDING PTE LTD
AS AN AGENT FOR OR ON BEHALF OF THE CARRIER |

```
House B/L No.: SGCHI2011002                S/O No.: SELAX2011032905    Page :      1
Vessel :        ONE                                        Page : 0032
 Marks and Numbers No. Of Pkgs  Description of Pkgs.         Gross Weight    Measurement
                    135 CARTONS (CFS-CFS)                   1,347.00(Kg)    4.853  (CBM)
ASTRO MACHINE CORPORATION  135 CARTONS ON 3 PALLETS STC:-
630 LIVELY BLVD            INK TANK ASTRO DG 250ML CYAN
ELK GROVE VILLAGE          INK TANK ASTRO DG 250ML MAGENTA
IL 60007                   INK TANK ASTRO DG 250ML BLACK
UNITED STATES
                          MEMJET INVOICE NO: 1200020806


                          HS CODE: 84439920


                          AMS HBL: SGCHI2011002
                          AMS SCAC: MCLM
--------------------------------------------------------------------------------------
Total in Words : ONE HUNDRED AND THIRTY FIVE (135) CARTONS ONLY

-Container\Size\Seal No.-------------Qty-Unit-----------------------Status-----WTG(KG)--(CBM)-
HMMU9017175\LCL\HMM191939345      135 CARTONS                    CFS-CFS   1347.00  4.853
```

Consignor

PT. KAHATEX
JL.CIJERAH CIGONDEWAH GIRANG 16
RT.001/RW.032 MELONG, CIMAHI SELATAN
CIMAHI-JAWA BARAT INDONESIA



**TRANSPAC CARGOLINE**

Consignee

SOBEL WESTEX
ATTN.// S000001197
2670 S. WESTERN AVENUE
LAS VEGAS, NV 89109
USA

## BILL OF LADING

FOR COMBINED TRANSPORT
OR PORT TO PORT SHIPMENT

Notify Address

WELLS FARGO BANK, NATIONAL ASSOCIATION
2450 COLORADO AVE., STE. 3000 WEST
MAC : E2040-030
SANTA MONICA, CA 90404 USA **

| B/L No. |
| --- |
| JKLAX2010005 |

MCL -- Multi Container Line Inc.
d.b.a. Transpac CargoLine
2711 Centerville Rd., Ste. 300, PMB 335
Wilmington, DE 19808-1645 -- U.S.A
FMC #017837N

Subject to the Standard Conditions printed overleaf

| Precarriage by | Place of receipt* |
| --- | --- |
| TAICHUNG \V.055C | TANJUNG PRIOK,* |
| Ocean Vessel | Port of loading |
| NYK VESTA \V.070E | TANJUNG PRIOK,* |

| Port of discharge | Place of delivery* | Freight payable at | No. of orig. B/L |
| --- | --- | --- | --- |
| LONG BEACH, CA | LONG BEACH, CA | DESTINATION | THREE (3) |

| Marks and nos | Number and kind of packages | Description of goods | Gross weight kg | Measurements |
| --- | --- | --- | --- | --- |
| | 1x40' Cont. s.t.c. 665 CARTONS SHIPPER'S LOAD & COUNT & SEAL | | 5,339.00 (Kg) | 56.020 (CBM) |

*FREIGHT COLLECT*

FULL PARTICULARS AS PER ATTACHED SHEET



SHIPPED ON BOARD
26th Oct. 2020

Total in Word : ONE (1) CONTAINER ONLY

```
-Container\Size\Seal No.-------------Qty-Unit-----------------------Status-----WTG(KG)--(CBM)-
FSCU5096180\40'\YMAG451120          1x40' s.t.c. 665 CARTONS        CY-CY        5339.00 56.020
```

## COPY NON NEGOTIABLE

ACCORDING TO CONSIGNORS DECLARATION

*If filled in shipment will be treated as combined transport

| Container No. | Seal No. | Declared value (see clause 6.4.3 overleaf) |
| --- | --- | --- |

Received and shipped in apparent good order and condition, unless otherwise noted herein. The goods and instructions are accepted and dealt with subject to the standard conditions printed overleaf and to which the merchant agrees by accepting this combined transport bill of lading.

One of these combined transport bills of lading must be surrended in exchange for the goods. In witness whereof original combined transport bills of lading all of this tenor and date have been signed in the number stated above, one of which being accomplished, the other(s) to be void.

For release of the goods apply to:

8200 NW 52 NS TERRACE SUITE 108
DORAL, FL 33166

Tel : +1 305 468 8540 Fax : +1 305 468 8570

Freight and charges:

* FREIGHT AS ARRANGE *

Special remarks:

Place and date of issue:
JAKARTA 25th AUG 2020

As agent for the carrier
PT M+R FORWARDING INDONESIA

AS AN AGENT AND/OR ON BEHALF OF THE CARRIER