UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

IN RE:

*ONE APUS* CONTAINER SHIP INCIDENT ON NOVEMBER 30, 2020

*This Document Relates to Mitsui Sumitomo Ins. Co. of Am., et al. v. M/V One Apus, et al., Case No. 22-cv-08233, Southern District of New York*

------------------------------------------------------------ X

22-md-3028 (PAE)

**Referral of Claims to Magistrate Judge Pursuant to Settlement Agreement**

**MOTION TO ENFORCE SETTLEMENT AGREEMENT**

CHIDORI SHIP HOLDING LLC and JESSICA SHIP HOLDING S.A., making restricted appearances as Owners and bareboat charterers, respectively, of the M/V ONE APUS (collectively, "Owners") respectfully move this Court, pursuant to Section 3(A) of the Settlement Agreement entered into in this action (ECF No. 575-1) and this Court's retained jurisdiction to enforce that Agreement, for an order referring certain claims to the Magistrate Judge for a ruling.

**BACKGROUND**

**A. The Settlement Agreement**

On December 8, 2023, the parties to the various lawsuits subject to the above-captioned MDL Action entered into a Settlement Framework Agreement ("SFA") to resolve the claims of Cargo Interests[1] arising from the loss of and/or damage to cargo aboard the M/V ONE APUS (ECF No. 575-1; Declaration of Caroline J. Wilson ["Wilson Decl."] ¶ 3, Ex. A). The SFA established a structured claim submission and adjustment process, under which Cargo Interests would produce

[1] "Cargo Interests" being the shippers, consignees, cargo owners, and/or their subrogated insurers seeking recovery for loss of or damage to cargo.

documents in support of their right to recover and Owners would evaluate each cargo claim and pay a percentage of the provable damages under the United States Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 *et seq*. (note). Notwithstanding the general agreement to pay a percentage of provable damages for each claim, Owners expressly reserved four enumerated defenses including: (1) Time Bar; (2) Title/Right to Sue; (3) Quantum of Damage Amount; and (4) Package Limitation. Relevant for the cargo claims subject to this Motion is the Title/Right to Sue defense. The Title/Right to Sue defense per the SFA "shall be governed by the general maritime law of the United States of America and/or Rule 17 of the Federal Rules of Civil Procedure. The Settling Cargo Claimant may meet the requirement by providing documentation, including, but not limited to, a subrogation receipt, assignment, or commercial document, showing that the Settling Cargo Claimant possesses the legal right or authority to settle and release the Claim." (SFA, Section 2(L)).

The SFA applies to claims identified in "Schedule C" which represents a master list of applicable legal actions and claims subject to the same. For ease of reference the parties have referenced each particular claim by its "line" number in Schedule C. (ECF No. 575-2)

Section 3 of the SFA contains a Dispute Resolution clause that provides that any claim involving a legal/factual dispute may be referred to the Magistrate Judge for determination. The SFA provides that the party requesting referral "shall file any required pleadings or other documents with the Court to request that the Magistrate issue a ruling on the disputed [c]laim." (SFA, Section 3(A)).[2]

**B. <u>The Disputed Claim</u>**

The disputed claims at issue here are subject to *Mitsui Sumitomo Ins. Co. of Am., et al. v. M/V One Apus, et al.,* Case No. 22-cv-08233 and are identified by their reference number in Schedule C to the SFA as Lines 807, 808, and 849 (the "Disputed Claims"). The Disputed Claims all involve the same claimant, and insurer, Sunshine Property and Casualty Insurance Co.

[2] Any opposition is due fourteen days thereafter. (SFA, Section 3(A)).

("Sunshine"). Sunshine produced documents showing that NVOCC[3] Ningbo Port Southeast Logistics Group Co. ("Ningbo Port") issued a bill of lading no. SZSEL2005167 for container no. KOCU9025114 and bill of lading no. SZSEL2005166 for container no. KOCU9010454 (Ex. B to Wilson Decl.; Ex. C to Wilson Decl.). Both Ningbo Port bills of lading identify Hongkong Milley Limited ("Hongkong Milley") as the shipper and Forest Shipping USA Inc. ("Forrest Shipping USA") as the consignee. NVOCC De Well Shipping Inc. ("De Well") issued bill of lading no. SSNZS0016245 for container no. KOCU4252136 listing Shenzhen Laihangda Trading Co., Ltd. ("Shenzhen Laihangda") as shipper and L&H International Logistics Co Ltd ("L&H") as consignee. (Ex. D to Wilson Decl.) The three containers were lost overboard and Sunshine now seeks recovery of USD197,471.05 in damages for the loss to the cargo stowed therein.

Sunshine produced thirteen commercial shipping invoices for the cargo stowed in the three containers which total USD $178,466.60. Eleven of the thirteen invoices identify Forest Shipping USA as the buyer and an unknown[4] entity as the seller. (Ex. E to Wilson Decl.) The remaining two invoices concern container no. KOCU4252136. One invoice shows Turbo Supply Chain as the purchaser of the goods and Shenzhen Mingyiton Supply Chain as the seller. (Ex. E to Wilson Decl.) The last invoice indicates that Amazon is the purchaser and Shenzhen Feisu International Logistics is the seller. (Ex. E to Wilson Decl.)

Sunshine also produced letters of assignments associated for each invoice. (Ex. F to Wilson Decl.) For all invoices associated with container nos. KOCU9025114 and KOCU9010454, the assignor is identified as Hongkong Milley. The assignments also list the purported "insured" who appear to be different entities depending on the particular invoice. For container no. KOCU4252136, the shipper Shenzhen Laihangda executed a letter of assignment for each

[3] "An NVOCC is a common carrier that 'does not operate the vessels by which the ocean transportation is provided; and . . . is a shipper in its relationship with an ocean common carrier." *In re Hapag-Lloyd Aktiengesellschaft*, 573 F. Supp. 3d 934, at 948, n.8 (quoting 46 U.S.C. 40102(17)).

[4] The invoices are partially written in a foreign language. Without proper translation, the identity of the shipper, if included on the invoice, remains unknown.

associated invoice. The assignments again lists the purported insured. All thirteen letters of assignment produced by Sunshine assign rights to a variety of entities, none of whom are referenced in the commercial shipping documents including the shippers invoices or bills of lading.

In lieu of providing a subrogation receipt, Sunshine produced screenshots of wire transfers which seem to show that Sunshine wired money in amounts consistent with the quantum of each invoice. (Ex. G to Wilson Decl.) The recipient of each wire payment remains unknown[5] except for two transfers that show the payee as Tes Gelesco – an entity that is not referenced in any of the commercial shipping documents.

## ARGUMENT

Sunshine is an insurance company, and unless properly subrogated, has no independent right to claim for loss of or damage to the goods. *HSBC Ins. v. Scanwell Container Line*, No. CV 00-5729 SVW (SHx), 2001 U.S. Dist. LEXIS 26908, at *4 (C.D. Cal. July 25, 2001) ("An insurance company plaintiff only has standing to sue as subrogee when it has paid its insured"). The subrogated insurer "stands in the shoes of its insured" and "succeeds to whatever rights or *disabilities* he may have in the matter." *Lumbermens Mut. Cas. Co. v. Borden Co.*, 268 F. Supp. 303, 314 (S.D.N.Y. 1967) (emphasis added). Accordingly, the insurer's rights are only as good as its insured.

Here, Sunshine has failed to prove it has title to sue. Even if Owners accept the screenshots of wire payments as authenticated evidence of equitable subrogation, there is no evidence that the payee (whoever the payee may be) had any interest in the cargo or relationship to the shipments such that the payee could have brought the claim in the first instance. While it is conceivable that the shippers, who gave the assignment, may have had an interest in the goods (although this too remains unproven), the assignment is meaningless unless the identity of the payee is known. The screenshots of the wire payments establish that money moved somewhere; they do not establish that the recipients were the shipper, the consignee, the owner of the goods at the time of loss, or

[5] The screenshots are largely in foreign language and without proper translation, the payees' identities are unknown to Owners.

anyone in privity with the parties named in the contract of carriage. Absent a subrogation receipt or comparable proof tying the payment to the party actually bearing the risk of loss, and absent any documentary link between the wire recipients and the named parties to the contract of carriage, the insurer has not carried its burden of showing that it, or its assignor, ever held the title necessary to bring this action.

## CONCLUSION

For the reasons outlined above, Owners respectfully request that the Magistrate Judge issue a ruling that the Disputed Claims are barred by application of Owners reserved Title/Right to sue defense.

Dated: August 4, 2026

By: *___/s/ Timothy Semenoro___*

Timothy Semenoro
Robert E. O'Connor
MONTGOMERY McCRACKEN WALKER & RHOADS LLP
437 Madison Avenue
New York, New York 10022
Tel: (212) 867-9500
Email: tsemenoro@mmwr.com
rconnor@mmwr.com

and

*___/s/ Caroline J. Wilson___*

Alan Nakazawa
Caroline J. Wilson
COLLIER WALSH NAKAZAWA LLP
*Pro Hac Vice*
180 E. Ocean Blvd. Suite 500
Long Beach, California 90802
Tel: (562) 317-3300
Email: alan.nakazawa@cwn-law.com
caroline.wilson@cwn-law.com

GRANTED. By separate order, the Court will refer the claims in this action to the Magistrate Judge for a ruling.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: August 5, 2026
New York, New York