UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>*ONE APUS* CONTAINER SHIP INCIDENT ON NOVEMBER 30, 2020<br><br>*This Document Relates to Mitsui Sumitomo Ins. Co. of Am., et al. v. M/V One Apus, et al., Case No. 22-cv-08233, Southern District of New York* | 22-md-3028 (PAE)<br><br>**Referral of Claims to Magistrate Judge Pursuant to Settlement Agreement** |

**MOTION TO ENFORCE SETTLEMENT AGREEMENT**

CHIDORI SHIP HOLDING LLC and JESSICA SHIP HOLDING S.A., making restricted appearances as Owners and bareboat charterers, respectively, of the M/V ONE APUS (collectively, "Owners") respectfully move this Court, pursuant to Section 3(A) of the Settlement Agreement entered into in this action and this Court's retained jurisdiction to enforce that Agreement, for an order referring certain claims to the Magistrate Judge for a ruling.

## BACKGROUND

### A. The Settlement Agreement

On December 8, 2023, the parties to the various lawsuits subject to the MDL Action entered into a Settlement Framework Agreement ("SFA") to resolve the claims of Cargo Interests arising from the loss of and/or damage to cargo aboard the M/V ONE APUS (ECF No. 575-1; Declaration of Caroline J. Wilson ["Wilson Decl.] ¶3, Ex. A). The SFA established a structured claim submission[1] and adjustment process, under which Cargo Interests would produce documents in

[1] Due to the claim submission procedure in the SFA, formal discovery was never propounded by any party. Counsel for cargo interests submitted claim documents as required under the SFA and the parties relied on the voluntary cooperation of the NVOCCs and VOCCs to fill in the

support of their right to recover and Owners would evaluate each cargo claim and pay a percentage of the provable damages under the United States Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 *et seq*. (note). Notwithstanding the general agreement to pay a percentage of provable damages for each claim, Owners expressly reserved four enumerated defenses including: (1) Time Bar; (2) Title/Right to Sue; (3) Quantum of Damage Amount; and (4) Package Limitation. Relevant for the cargo claims subject to this Motion is the Owners package limitation defense. The parties to the SFA agreed that this defense "refers to the $500 per-package or customary freight unit limitation provided under COGSA *ex proprio vigore*, except where an applicable contract provides for a higher limitation amount." (SFA, Section 2(J)).

The SFA applies to claims identified in "Schedule C" which represents a master list of applicable legal actions and claims subject to the same. For ease of reference the parties have referenced each particular claim by its "line" number in Schedule C. (ECF No. 575-2)

Section 3 of SFA contains a Dispute Resolution clause that provides that any claim involving a legal/factual dispute may be referred to the Magistrate Judge for determination. Any party requesting referral "shall file any required pleadings or other documents with the Court to request that the Magistrate issue a ruling on the disputed [c]laim." (SFA, Section 3(A)).[2] Finally, the Dispute Resolution clause allows the parties to group claims together that involve the same disputed issue for resolution by the Magistrate Judge.

**B. <u>The Disputed Claims</u>**

The claims at issued here are subject to *Mitsui Sumitomo Ins. Co. of Am., et al. v. M/V One Apus, et al.*, Case No. 22-cv-08233 and are identified by reference number in Schedule C to the SFA as Lines 603-606, Line 608, and Line 712 (collectively, the "Disputed Claims"). Each of the

---

informational gaps. To the extent there remains a question of fact related to information obtained within the custody and control of the NVOCC or VOCCs, Owners respectfully request the opportunity to conduct limited discovery to resolve the same.

[2] Any opposition is due fourteen days thereafter. (SFA, Section 3(A)).

Disputed Claims involves the same basic issue: how COGSA's $500 limitation of liability applies to tires that were loaded loose into shipping containers without any individual packaging.

i. *Lines 603-606*

Continental Insurance Company, as subrogated insurers of the relevant consignee Tireco, Inc. ("Tireco") ("Tireco Cargo Interests") seeks USD 230,725.02 for four containers of tires that were lost overboard. The commercial invoice reflects a value of USD 131,565.23 for the cargo. Tireco Cargo Interests' full claim amount appears to reflect a claim for lost profits, but they have not produced any documents to substantiate the higher claim value.[3]

The tires were shipped in container nos. SEGU4498821, TCNU1516424, TCNU3469039, YMLU8598037 and moved under VOCC[4] Yang Ming sea waybill no. YMLUW425908605.[5] (Ex. B to Wilson Decl.). The face of the waybill contains columns entitled "NO OF PKGS" and "DESCRIPTION OF PACKAGES AND GOODS." Under "NO OF PKGS" the waybill states "10 CTNR."[6] Under "DESCRIPTION OF PACKAGES AND GOODS" it states "10x40'HC CONTAINER 3,771 PCS OF RUBBER TYRES." (Ex. B to Wilson Decl.). In other words, the waybill identifies ten containers as the packages and separately identifies the cargo inside those

[3] If and to the extent it becomes relevant in light of COGSA's limitation, Owners also submit that Tireco Cargo Interests' are only entitled to recover the agreed upon percentage of the invoice value. The SFA expressly provides that for any claims involving a damage amount greater than the value of the commercial invoice, plus insurance, plus freight, cargo interests must provide additional documentation to substantiate the higher value per the standard under COGSA. (SFA, Section 2A). Owners' denial of the lost profits portion of the claim amount is made pursuant to Section 2A of the SFA, in addition to its reserved defense "Quantum of Damage Amount" as further defined under Section 2(K) of the SFA.

[4] "VOCC" or "ocean common carrier" is a carrier that "[h]olds itself out to the general public to provide transportation by water of passengers or cargo" and "[a]ssumes responsibility for the transportation." *In re Hapag-Lloyd Aktiengesellschaft*, 573 F. Supp. 3d 934, 948, n. 5 (S.D.N.Y. 2021).

[5] Depending on the circumstances the VOCC either issued a sea waybill or bill of lading. Both a waybill and bill of lading serve as the contract of carriage. There are instances in which the distinction between a sea waybill and bill of lading are material, but these are not present here. *See HDI Glob. Ins. Co. v. Kuehne + Nagel, Inc.*, No. 23-cv-6351, 2025 U.S. Dist. LEXIS 23714, at *12, n. 5 (S.D.N.Y. Feb. 10, 2025).

[6] "CTNR" refers to each shipping container.

containers as 3,771 "pieces" of rubber tires. The waybill further identifies the number of tires loaded into each of the four containers at issue: SEGU4498821 (384 pieces), TCNU1516424 (341 pieces), TCNU3469039 (357 pieces), YMLU8598037 (334 pieces). Nowhere does the waybill describe those individual pieces as "packages," nor does it describe how the pieces were packaged. The relevant packing list also confirms that each "piece" is not packaged. The packing list contains an entry entitled "Number and Kind of Packages" and again recites "10 x 40'HC Container," again referring to the containers themselves and not each individual piece. (Ex. D to Wilson Decl.).

The manner in which the tires were prepared and loaded further confirms that they were not individually packaged. Tireco Cargo Interests have represented that Tireco places a shipping label directly onto each tire identifying the tire's type, size, barcode and warranties. The tires were then loaded directly into the containers in a purported "lacing" pattern. Based on photographs provided by counsel, the "lacing" pattern simply refers to the manner in which the loose tires were stacked inside the container. The tires were not wrapped, boxed, strapped, bundled, palletized or otherwise prepared as individual packages.

Finally, and as will become relevant below, Yang Ming confirmed that freight was calculated and charged on a per-container basis. (Ex. E to Wilson Decl.).

ii. *Line 608*

Tireco Cargo Interests seek recovery in the amount of USD 50,679.70[7] for an additional container that went overboard. Here the cargo was shipped in container no. MOEU1402628 under VOCC ONE sea waybill no. ONEYBKKAM3407900. Notably, the face of the ONE waybill does not have a classic "Number of Packages Column" or equivalent. (Ex. F to Wilson Decl.). Instead, it contains a column entitled "QUANTITY (FOR CUSTOMS DECLARATION ONLY)" which states "830 PIECES." (Ex. F to Wilson Decl.). The cargo is then described as "TIRES."

[7] The commercial invoice value for the goods is USD 37,343.00. Tireco Cargo Interests have not explained the discrepancy between the invoice value and the higher claim amount. If and to the extent it becomes relevant in light of the limitation, Owners again submit that Tireco Cargo Interests' are only entitled to recover the agreed upon percentage of the invoice value under the terms of the SFA.

Nothing on the face of the waybill describes the 830 individual tires as packages, but ONE's waybill terms and conditions provide helpful context. Clause 26.2 of ONE's waybill terms and conditions defines a "package" as "any palletised and/or unitised assemblage of cartons which has been palletised and/or unitised for the convenience of the Merchant." (Ex. G to Wilson Decl.). The tires here were neither palletized, unitized nor packed in cartons The packing list likewise does not describe the tires as individually packaged. Rather, the applicable commercial documents simply identify the number of loose pieces loaded into the container. (Ex. H to Wilson Decl.). Finally, ONE has confirmed that freight for container no. MOEU1402628 was calculated on a per-container basis. (Ex. I to Wilson Decl.).

iii. *Line 712*

Ascot Underwriting Unlimited, as subrogated insurers of the consignee TBC Corporation ("TBC Cargo Interests") brings a claim for USD 34,441.04 for a cargo of 932 tires stuffed in container no. HMMU6210344 that was lost overboard. The cargo moved under VOCC HMM bill of lading no. HDMUTHWB1406199.

The face of HMM's bill of lading contains a column entitled "No. of Containers or Other Pkgs." The relevant entry states: "1x40 'HC CY / DR 1 CNTR. 932 PIECES." (Ex. J. to Wilson Decl.). That entry continues into the adjacent "Description of Packages and Goods" column. More importantly, the bill of lading contains a separate section entitled "Total Number of Containers or Packages (in words)." That section states: "ONE (1) CONTAINER ONLY." Accordingly, although the bill of lading identifies 932 individual pieces of cargo, it expressly identifies the shipping container as the "container or package." Nowhere does it describe the tires as packages. The commercial invoice likewise does not describe the individual tires as packages. (Ex. K to Wilson Decl.).[8]

[8] While it could be inferred that the packing list would likewise not describe the tires as packaged, TBC Cargo Interests were unable to produce a packing list in support of its claim. To the extent TBC Cargo Interests contend that the tires are in fact packaged in some way, Owners respectfully request the opportunity to conduct a limited deposition or written discovery on either the shipper or receiver of these goods that would confirm that tires are not packaged.

Finally, HMM confirms that freight was calculated on a per-container basis for container no. HMMU6210344. (Ex. L to Wilson Decl.).

## ARGUMENT

### A. COGSA Limits Liability to $500 Per Package and For Goods Not Shipped In Packages, Per Customary Freight Unit

COGSA provides that "neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package . . . or in the case of goods not shipped in packages, per customary freight unit." COGSA § 4(5). The analysis therefore begins with a simple question of whether the individual tires were "packages" within the meaning of COGSA. As explained *infra*, they were not.

"The question of what constitutes a COGSA package . . . is largely and in the first instance a matter of contract interpretation." *Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 485 (2d Cir. 1985). Where a bill of lading identifies the container as the package and separately identifies the contents merely as "pieces" or "units" those individual pieces do not because COGSA packages simply because their quantity is stated on the bill of lading. *See Norwich Union Fire Ins. Soc., Ltd. v. Lykes Bros. S.S. Co.*, 741 F. Supp. 1051, 1057 (S.D.N.Y. 1990) (citing *Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam*, 759 F.2d 1006, 1015 (S.D.N.Y. 1985)). Rather, where the contents of the container are described in the bill of lading as "units" or "pieces," reference to the number of units within the container "by itself would be insufficient to establish that they were packages under COGSA," unless there is evidence of "some packaging preparation." *Alt. Glass Supplies v. M/V Nomzi*, 1999 AMC 1080, 1084 (S.D.N.Y. 1999) (citing *Binladen*, 759 F.2d 1013; *Norwich*, 741 F. Supp. at 1057)); *see also Aviles v. S.S. SAN JUAN*, 1991 A.M.C. 2681 (S.D.N.Y. 1991) (highlighting that cargo designated as "pieces" rather than "cases", "cartons," or "packages" does not imply the pieces were packaged).

A "package" within the meaning of COGSA must "connot[e] preparation in some way for transport." *Binladen*, 759 F.2d at 1013. More specifically, a package is cargo "to which some

packaging preparation for transportation has been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods." *Allied Int'l Am. Eagle Trading Corp. v. S.S. "Yang Ming,"* 672 F.2d 1055, 1056-57 (2d Cir. 1982) (quoting *Aluminios Pozuelo, Ltd. v. S.S. Navigator*, 407 F.2d 152, 155 (2d Cir. 1968)); *see e.g. Allied Int'l Am. Eagle Trading* 672 F.2d at 1061 (holding that a "pallet" may be considered a package); *Seguros "Illimani" S.A. v. M/V Popi P*, 929 F.2d 89, 95 (2d Cir. 1991) (holding that "bundles" of ingots were each a package because the ingots "were in fact strapped together in bundles").

When goods are shipped without any packaging preparation, such items are not "packages" as specified in COGSA Section 4(5). *Aluminios Pozuelo, Ltd.*, 407 F.2d at 155. To the extent goods are "goods not shipped in packages," COGSA's $500 limitation of liability applies per customary freight unit. *Norwich*, 741 F. Supp. at 1057 (citing *D.W.E. Corp. v. T.F.L. Freedom*, 704 F. Supp. 380, 385 (S.D.N.Y. 1989)). Customary freight unit is defined as "the actual freight unit used by the parties to calculate freight for the shipment at issue." *FMC Corp. v. S.S. Marjorie Lykes*, 851 F.2d 78, 80 (2d Cir. 1988). Where freight was calculated on a per-container basis, the customary freight unit is "one." *See Orient Overseas Container Line, (UK) Ltd. v. Sea-Land Serve.*, 122 F. Supp. 2d 481, 490 (S.D.N.Y. 2000); *see also Mapfre Atlas Compania De Seguros S.A. v. M/V Loa*, 2017 U.S. Dist. LEXIS 122633 (S.D.N.Y. Aug. 2, 2017).

In light of the above framework, courts within the Second Circuit have held that loose cargo stuffed inside a shipping a container will not be deemed the "package." In *Norwich*, the bill of lading described the shipment as "1x20' OPEN TOP CONTAINER SAID TO CONTAIN ONE NEW COMBI AISLE RANGER SERIAL NO: 88900 OVERHEIGHT UNIT, DIMS 292X150X300." 741 F. Supp. at 1057, n.6. The bill of lading did not identify the cargo inside the container as a separate package or explain how the cargo was packaged. The court therefore held that the container was the relevant package and the carrier's liability was limited to $500. *Id.* The court also reached the same practical result by holding, in the alternative, that if the container itself was not the package, then the cargo inside it constituted "goods not shipped in packages." *Id.*

*Mapfre* reached the same conclusion. There, the bill of lading identified the container under the "No. of Pkgs." column and separately described the cargo as "989 PIECES OF COMPUTER PARTS." 2017 U.S. Dist. LEXIS 122633 at *10. In rejecting the claimant's argument that each individual piece was a package, the court reasoned that the bill of lading did not explain how the individual computer parts were packaged, and importantly, did not refer to each piece as the "package." *Id.* The reference to "989 pieces" therefore did not establish 989 COGSA packages. Instead, because the bill of lading identified the container as the package and did not clearly identify any alternative, the court held that the container constituted the COGSA package. *Id.* at *12. Similar to *Norwich*, the court reached the same result in the alternative. If the container was not the package, the individual computer parts were "goods not shipped in packages," meaning that COGSA's limitation applied per customary freight unit. *Id.* at *14.

**B. <u>The Tires Are Not COGSA Packages</u>**

The threshold issue can be resolved with ease. The tires were not packaged. They were loose tires. Nothing was placed around them. They were not boxed, wrapped, strapped, bundled, palletized, or otherwise prepared in a manner that would transform each tire into a package. Instead, the tires were individually labeled and then stacked directly inside the shipping containers.

The commercial shipping documents confirm this. All relevant documents submitted for the Disputed Claims, describe the tires as "pieces," not "packages." The distinction is significant because Second Circuit precedent makes clear that simply stating the number of "pieces" inside a container does not make each piece a COGSA package. There must be some indication, either from the shipping documents or the physical preparation of the cargo, that the individual item was actually packaged for transportation.

Indeed, the available evidence points in the opposite direction. The bills of lading/waybills commercial invoices, and packing lists distinguish between the containers and the individual pieces of cargo. The physical evidence likewise shows that the tires were loaded loose into the containers. The fact that a shipping label was affixed directly to each tire does not change the analysis. A label identifies the cargo; it does not package it.

i. *Lines 603-606*

The waybill identifies "10 CTNR" under the "NO OF PKGS" column. It then separately describes the contents of those containers as "3,771 PCS OF RUBBER TYERS." The document therefore distinguishes between the containers identified as packages and the individual tires identified merely as pieces. The packing list makes the same distinction. The physical condition of the cargo is consistent with the shipping documents. Each tire had a shipping label placed directly on it and was then stacked loose inside the container in a lacing pattern. There was no box, wrapping, strapping, pallet, bundle, or other packaging around the individual tire. Thus, there is no basis in either the shipping documents or the physical preparation of the cargo to treat each tire as a separate COGSA package. Because the tires were goods not shipped in packages, COGSA's limitation applies per customary freight unit. Yang Ming has confirmed that freight was calculated per container. The customary freight unit is therefore "one" and the applicable limitation is $500 for each container at issue.

ii. *Line 608*

ONE's waybill describes the cargo as "830 PIECES" of "TIRES." It does not describe those 830 pieces as packages nor does the packing list identify any method of packaging. Tireco's practice of placing a sticker on each tire does not convert the tires into a "package" as a factual matter. ONE's contractual definition of "package" reinforces this conclusion. Clause 26.2 contemplates a "palletised and/or unitised assemblage of cartons." The individual tires satisfy none of those characteristics. The 830 loose tires therefore constitute goods not shipped in packages. Because ONE calculated freight on a per-container basis, the customary freight unit is "one." COGSA's limitation is therefore $500 for container no. MOEU1402628.

iii. *Line 712*

Line 712 leads to the same result. HMM's bill of lading identifies "1 CNTR. 932 PIECES," Although the bill of lading identifies the quantity of tires inside the container, it does not identify the individual tires as being packaged. Nothing in the invoice does so either. As with the other Disputed Claims, the individual tires were not separately packaged. They therefore constitute

goods not shipped in packages. HMM has confirmed that freight was calculated on a per-container basis. The customary freight unit is again "one," and the applicable COGSA limitation is $500.

### C. Alternatively, If the Cargo Is "Packaged," the Container Is the Package

To the extent the goods are not deemed to be those "not shipped in packages" then of course, something must be the package. In this case, the only identifiable package is the shipping container. This is precisely the alternative analysis applied in *Norwich* and *Mapfre*. In each case, the bill of lading identified a container while separately stating the number of individual items or "pieces" inside it. Because those individual items were not separately identified as packages, the courts refused to treat the number of pieces as the number of COGSA packages. The same is true here.

For Lines 603-606, the Yang Ming waybill expressly states "10 CTNR" under "NO OF PKGS," while separately describing the goods as "3,771 PCS." The corresponding packing list likewise identifies "10 x 40'HC Container" as the "Number and Kind of Packages."

For Line 608, ONE's waybill identifies "830 PIECES" for customs purposes but does not describe the tires as being packaged. The packing list provides no evidence of packing, and under Second Circuit's law, and as a matter of contract, the pieces themselves are not the package. Accordingly, the only conceivable package is the shipping container.

For Line 712, HMM's bill of lading expressly identifies the package as "ONE (1) CONTAINER ONLY."

Accordingly, if the Court determines that the Disputed Claims involve cargo shipped in packages, the containers themselves are the only packages identified by the relevant shipping documents. The result is therefore the same under either limitation analysis and the limitation of liability would be $500 per shipping container.

## CONCLUSION

The Disputed Claims involve loose, individually unwrapped tires loaded directly into shipping containers. The tires were not boxed, bundled, strapped, palletized, or otherwise prepared as individual packages. Faced with a fork in the road, there are only two conceivable outcomes.

The goods are unpackaged and the customary freight unit applies, or the goods are packaged and the container is the relevant package. Under either analysis, the result is the same and liability under COGSA is limited to $500 per container. Given that six containers are subject to this Motion, liability would be limited to $3,000 of which, Owners would pay $1,950 pursuant to the SFA.

Dated: August 4, 2026

By: *_____/s/ Timothy Semenoro_____*

Timothy Semenoro
Robert E. O'Connor
MONTGOMERY McCRACKEN WALKER & RHOADS LLP
437 Madison Avenue
New York, New York 10022
Tel: (212) 867-9500
Email: tsemenoro@mmwr.com
rconnor@mmwr.com

and

*/s/ Caroline J. Wilson*

Alan Nakazawa
Caroline J. Wilson
COLLIER WALSH NAKAZAWA LLP
*Pro Hac Vice*
180 E. Ocean Blvd. Suite 500
Long Beach, California 90802
Tel: (562) 317-3300
Email: alan.nakazawa@cwn-law.com
caroline.wilson@cwn-law.com

GRANTED. By separate order, the Court will refer the claims in this action to the Magistrate Judge for a ruling.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: August 5, 2026
New York, New York