UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE:<br><br>*ONE APUS* CONTAINER SHIP INCIDENT ON NOVEMBER 30, 2020<br><br>*This Document Relates to Mitsui Sumitomo Ins. Co. of Am., et al. v. M/V One Apus, et al., Case No. 22-cv-08233, Southern District of New York* | X<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>X | 22-md-3028 (PAE)<br><br>**Referral of Claims to Magistrate Judge Pursuant to Settlement Agreement** |

## MOTION TO ENFORCE SETTLEMENT AGREEMENT

CHIDORI SHIP HOLDING LLC and JESSICA SHIP HOLDING S.A., making restricted appearances as Owners and bareboat charterers, respectively, of the M/V ONE APUS (collectively, "Owners") respectfully move this Court, pursuant to Section 3(A) of the Settlement Agreement entered into in this action and this Court's retained jurisdiction to enforce that Agreement, for an order referring certain claims to the Magistrate Judge for a ruling.

## BACKGROUND

### A. The Settlement Agreement

On December 8, 2023, the parties to the various lawsuits subject to the MDL Action entered into a Settlement Framework Agreement ("SFA") to resolve the claims of Cargo Interests arising from the loss of and/or damage to cargo aboard the M/V ONE APUS (ECF No. 575-1; Declaration of Caroline J. Wilson ["Wilson Decl.] ¶3, Ex. A). The SFA established a structured claim submission and adjustment process, under which Cargo Interests would produce documents in support of their right to recover and Owners would evaluate each cargo claim and pay a percentage of the provable damages under the United States Carriage of Goods by Sea Act ("COGSA"), 46

U.S.C. § 30701 *et seq*. (note). Notwithstanding the general agreement to pay a percentage of provable damages for each claim, Owners expressly reserved four enumerated defenses including: (1) Time Bar; (2) Title/Right to Sue; (3) Quantum of Damage Amount; and (4) Package Limitation. Relevant for the cargo claims subject to this Motion is the Quantum of Damage Amount. The parties to the SFA agreed that Quantum of Damage Amount defense means that Owners will only settle the measure of damages based on the "provable damages under COGSA." (SFA, Section 2(L)).

The SFA applies to claims identified in "Schedule C" which represents a master list of applicable legal actions and claims subject to the same. For ease of reference the parties have referenced each particular claim by its "line" number in Schedule C. (ECF No. 575-2)

Section 3 of SFA contains a Dispute Resolution clause that provides that any claim involving a legal/factual dispute may be referred to the Magistrate Judge for determination. Any party requesting referral "shall file any required pleadings or other documents with the Court to request that the Magistrate issue a ruling on the disputed [c]laim." (SFA, Section 3(A)).[1] Finally, the Dispute Resolution clause allows the parties to group claims together that involve the same disputed issue for resolution by the Magistrate Judge.

**B. The Disputed Claims**

The claims at issued here are subject to *Mitsui Sumitomo Ins. Co. of Am., et al. v. M/V One Apus, et al.*, Case No. 22-cv-08233 and are identified by reference number in Schedule C to the SFA as Lines 752-756 (collectively, the "Disputed Claims"). Munich Underwriting Ltd., as subrogated insurers of the relevant consignee Turbo Wholesale Tires, Inc. ("Turbo") (collectively, "Turbo Cargo Interests") seek USD 189,429.55 four overboard containers and one container that sustained damage. Each of the five subject containers are specifically identified as follows: container no. HDMU6877494 carried under Proshipping Group Corp bill of lading no. PGCVTHWB1445929 and HMM bill of lading no. HDMUTHWB1445950; container no.

[1] Any opposition is due fourteen days thereafter. (SFA, Section 3(A)).

TCLU9247073 moved under Proshipping Group Corp. bill of lading no. PGCVTHWB1445941, TopOcean Consolidation Service (Los Angeles) Inc. bill of lading no. BKKLAXKA4686B and HMM bill of lading no. HDMUTHWB1445941; and container nos. DFSU6623803, HDMU6880991, HDMU6892230 moved under Proshipping Group Corp. bill of lading no. PGCVTHWB1445940, TopOcean Consolidation Service (Los Angles) Inc. bill of lading no. BKKLAXKA4685A and HMM bill of lading no. HDMUTHWB1445940.

Container no. HDMU6877494 sustained damage during the subject incident and a total of 134 units of the subject cargo was deemed a total loss. The total invoice value for the damaged units was $4,770,18. (Ex. B to Wilson Decl.) The total invoice value of the remaining four overboard containers totals USD 111,856.97. (Ex. B to Wilson Decl.) Turbo Cargo Interests' claim value in the total amount of USD 189,429.55 is based on the purported resell value of the goods. (Ex. C to Wilson Decl.). In support of its claim for resell value, Turbo Cargo Interests provided a survey report which summarizes the claim for lost profits. (Ex. C to Wilson Decl.). In addition to the survey report, Turbo Cargo Interests provided a "Preliminary and Tentative" lost inventory-summary that seems to contain an analysis of the selling price and saved expenses for the Disputed Claims. (Ex. C to Wilson Decl.). Turbo Cargo Interest also produced resell invoices from Turbo to its customers that Owners assume, but cannot confirm, are meant to act as representative samples of what the resell value of the goods might have been around the time of the incident.

## ARGUMENT

COSGA provides that "in no event shall the carrier be liable for more than the amount of damage actually sustained." COGSA §4(5). A claimant may be entitled to recover lost profits under COGSA, but "only if plaintiff actually lost profits." *Levi Strauss & Co. v. Sea-Land*, 2003 U.S. Dist. LEXIS 8171, at *3 (S.D.N.Y. May 14, 2003). The claimant "must show that it in fact suffered lost profits and that it could not mitigate damages by substitution of comparable goods from the market." *Id.* **3-4 (quoting *Illinois Cent. R. Co. v. Crail*, 281 U.S. 57, 64 (1930). Absent such a showing the market value of damages "may be discarded and other more accurate means resorted to, if, for special reasons, it is not exact or otherwise not applicable." *Id.*; *see also Valerina*

*Fashions, Inc. v. Hellman Int'l Forwarders, Inc.*, 897 F. Supp. 138, 140 (S.D.N.Y.1995) (finding that the claimant "must show that it in fact suffered lost profits and that it could not mitigate damages by substitution of comparable goods from the market.").

Turbo Cargo Interests have failed to establish that they are entitled to recover the claimed lost profits. At most, they have produced exemplar invoices that provide only a rough estimate of the potential resale value of the goods around the time of the incident. Likewise, although the claimed damages include deductions for "saved expenses," those figures are derived solely from representations contained in a "Preliminary and Tentative" Lost Inventory Summary and are unsupported by any underlying documentation. To that end the Lost Inventory Summary is self-described as preliminary and speculative making its conclusions stated therein speculative and uncertain.

Most importantly, Turbo Cargo Interests have failed to demonstrate that they actually lost a sale. Moreover, they have offered no evidence explaining why the alleged lost sale could not have been mitigated through existing inventory, replacement orders, or the procurement of substitute goods on the market. Without such evidence, the claim for lost profits is speculative and unrecoverable. See *Valerina Fashions, Inc.*, 897 F. Supp. at 140.

**CONCLUSION**

Given the invoice value of the Disputed Claims is the most accurate measure of Turbo's actual loss, liability under the SFA should be limited to the total invoice value of USD 116,627.15, of which, Owners would pay USD 75,807.65 pursuant to the SFA.

Dated: August 4, 2026

By: *<u>/s/ Timothy Semenoro</u>*

Timothy Semenoro
Robert E. O'Connor
MONTGOMERY McCRACKEN WALKER & RHOADS LLP
437 Madison Avenue
New York, New York 10022
Tel: (212) 867-9500
Email: tsemenoro@mmwr.com
rconnor@mmwr.com

and

*<u>/s/ Caroline J. Wilson</u>*

Alan Nakazawa
Caroline J. Wilson
COLLIER WALSH NAKAZAWA LLP
*Pro Hac Vice*
180 E. Ocean Blvd. Suite 500
Long Beach, California 90802
Tel: (562) 317-3300
Email: alan.nakazawa@cwn-law.com
caroline.wilson@cwn-law.com

GRANTED. By separate order, the Court will refer the claims in this action to the Magistrate Judge for a ruling.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: August 5, 2026
New York, New York