UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE:<br><br>*ONE APUS* CONTAINER SHIP INCIDENT ON NOVEMBER 30, 2020<br><br>*This Document Relates To: Mitsui Sumitomo Ins. Co. of Am., et al. v. M/V One Apus, etc. et al., Case No. 22-cv-08233, Southern District of New York* | X<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>X | 22-md-3028 (PAE)<br><br>**Motion to Enforce Settlement Agreement** |

## MOTION TO ENFORCE SETTLEMENT AGREEMENT

Plaintiffs ASCOT UNDERWRITING LIMITED and CONTINENTAL INSURANCE COMPANY (collectively, referred to as "the Cargo Interests"), pursuant to Section 3(A) of the Settlement Agreement entered in this action (ECF No. 575-1), respectfully move to enforce that Agreement and to resolve the single, outcome-determinative question that survives settlement: how COGSA's $500 package limitation, 46 U.S.C. § 30702(a)(5), applies to three settled claim groupings, namely Lines 603 through 606, Line 608, and Line 712 of Schedule C. The parties have settled liability and causation. What remains is a pure question of contract interpretation that the Court can decide on the face of the operative bills of lading and the four corners of the Settlement Agreement, without discovery and without trial.

Chidori Shipholding LLC and Jessica Shipholding S.A. ("Owners") fail to apply the proper application of the Carriage of Goods by Sea Act's $500 per package limitation, 46 U.S.C. § 30702(a)(5), and the definition of "package" for three settled claim groupings (Lines 603–606, 608, and Line 712 of Schedule C). Owners attempt to evade the package limitation rule under

COGSA by overriding the Settlement Agreement § 2.H for Lines 603-606, 608 and 712. The parties have otherwise settled liability and causation; only the damages calculation under COGSA's limitation remains in dispute. The Court should enforce the Agreement as written and hold that the COGSA packages are the smaller units disclosed on the face of each bill and not the containers.

## I. The Settlement Agreement Forecloses Owners' Package Arguments

The Settlement Agreement governing Schedule C claims (including Lines 603–606, 608 and 712) provides in § 2.H that, save for specific reserved defenses, Owners may challenge claimed damages only for reasons not reasonably anticipated as of the Effective Date. The Settlement Agreement ***expressly bars*** reliance on bill of lading terms and conditions relating to the definition of "package" ***other than as allowed*** under COGSA *ex proprio vigore*.

The Settlement Agreement then names the specific issues the parties already resolved and placed off limits. Among them, in the parties' own words:

> [T]he following defenses and issues have already been considered and taken into account by Owners/Charterers and the Settling NVOCCs in reaching this Agreement and, therefore, cannot be raised or relied on … to challenge or contest or otherwise dispute a Claim or the claimed Damages Amount: (i) the applicable bill of lading / waybill terms and conditions relating to … definition of "package" other than that allowed under COGSA ex proprio vigore….

Settlement Agreement § 2.H (Ex. A to Thames Decl.). The language could hardly be clearer. Any bill of lading term that defines "package" in a way the statue does not itself supply is to be disregarded. The parties agreed such terms "have already been considered" and "cannot be raised or relied on." *Id.*

Many of the bills in this MDL carry their own definitions of "package," each drafted by a carrier and every one more generous to the carrier than to cargo. Paragraph 2.H exists precisely to keep those carrier-drafted definitions out of the damages calculation, so that the packages are counted the way COGSA counts them and not the way an issuer's clause printed in six point type on the reverse side of the bill of lading would have it.

## II. The Operative Bills Disclose the Smaller Units, and There Is No Customary-Freight-Unit Problem.

On each line in dispute, the operative bill discloses the individual units, and that disclosure controls. How the carrier calculated or quoted freight for a particular shipment or bill of lading is immaterial to the package count. The freight-based question is one this Court never has to address.

### A. Lines 603–606 (Yang Ming Tires): 3,771 Pieces

Cargo Interests contracted with Yang Ming, as NVOCC, to carry tires from Indonesia to Long Beach. The NVOCC bill lists 3,771 pieces under the column labeled "Description of Packages and Goods" in the bill of lading. Even the carrier-to-carrier Yang Ming bill, which lists ten containers, also describes the same 3,771 pieces. Each tire was individually labeled and laced for handling in accordance with U.S.-bound shipping procedure. These were not a bulk commodity poured into a box; they were discrete, prepared units, and the bill says so. Under *Monica Textile Corp. v. S.S. Tana*, 952 F.2d 636, 639 (2d Cir. 1991) when the bill refers to both containers and the smaller units inside them, the container is not the package. Each tire was labeled and laced for individual handling, which satisfies *Aluminios Pozuelo* 407 F.2d at 155 without more. The count is 3,771.

### B. Line 608: 830 Pieces

Container HMMU6210344 moved under bill of lading HDMUTHWB1406199, which describes the cargo as "830 Pieces" in the "Quantity" column and, under "Description of Goods", records that "the Shipper desires to state that Tires" are the goods carried. In other words, the bill contemplates 830 individual pieces—830 tires—as the units of carriage. The relevant bill of lading nowhere identifies any other quantity at all, much less a quantity that the parties could have intended as the package count.

Owners are anticipated to argue that HMM calculated freight on a per-container basis and therefore the limitation should be $500 per container as a "customary freight unit." The argument fails because it is barred: the customary-freight-unit theory is a route back to a container-as-package result, and § 2.H forecloses redefining the disclosed 830 pieces out of existence. Moreover, it is legally premature. Under *Mitsui & Co. v. American Export Lines*, the customary-freight-unit analysis is reached *only* when goods are not shipped in packages. 636 F.2d 807, 818–21 (2d Cir. 1981). Here the goods were shipped in packages, 830 of them, disclosed on the face of the bill, so the Court never needs to reach this inquiry. Further, even if it did, how HMM chose to price the freight does not rewrite what the bill says was carried. A carrier may quote freight per container for its own convenience while still contracting to carry 830 individual packages, 830 tires. The unit of carriage disclosed on the bill, not the unit of billing convenience, defines the package.

The bill discloses "830 Pieces" and states that the goods are tires, so under *Monica Textile*, 952 F.2d at 639, and *Aluminios Pozuelo*, 407 F.2d at 155, the 830 individually handled tires are the packages.

### C. Line 712: 932 Pieces

HMM's bill of lading THWB1406199 lists one container and 932 pieces. Owners can only argue the package limitation based on customary freight unit, but no document corroborates a single freight unit. The bill discloses 932 pieces and nothing disputes this. Under *Mitsui*, the analysis they invoke never even begins.

Again, *Monica Textile* makes the 932 disclosed units the packages rather than the container. 952 F.2d at 639. The customary-freight-unit theory fails here for the same threshold reason it fails on Line 608, because the goods were shipped in disclosed packages and *Mitsui* bars the inquiry. 636 F.2d at 818–21. The package quantity is 932.

## III. Under Settled Second Circuit Law, the Disclosed Smaller Units Are the COGSA Packages on Every Line.

Even setting the Settlement Agreement aside, the Vessel Interests lose the merits of the case as to all three groupings. The package limitation "is in the first instance a matter of contract interpretation," *Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam*, 759 F.2d 1006, 1012 (2d Cir. 1985), and here the contract, that is, the face of each operative bill of lading, discloses the smaller units. If the bill does so, then the pieces are the packages, not the containers.

That is the holding of *Monica Textile Corp. v. S.S. Tana*, 952 F.2d 636 (2d Cir. 1991). The Second Circuit held that "when what would ordinarily be considered packages are shipped in a container and the container is listed as the package on the bill of lading, but the number of such units in the container(s) is also disclosed, each of those units and not the container constitutes the 'package.'" *Id.* at 639. Where a bill refers both to a container and to smaller units capable of being packages, the container "is not the COGSA 'package,'" and the disclosed smaller units govern. *Id.* (citing *Mitsui*, 636 F.2d at 818–21); *accord Universal Leaf Tobacco*

*Co. v. Companhia de Navegação Maritima Netumar*, 993 F.2d 414, 417 (4th Cir. 1993) (adopting the bright-line rule that if the face of the bill discloses the number of packages inside a container, those packages are normally the COGSA units). Alternatively, the extent a bill referring to both a container and smaller units is "inherently ambiguous," *Monica Textile*, 952 F.2d at 642, that ambiguity is resolved against the carrier that drafted the bill and in favor of the disclosed units.

Two settled principles follow, and both apply to each line. First, the disclosed unit controls, so a labeled, individually-handled tire listed on the bill is the package. Second Circuit law has never required conventional wrapping; what matters is "some packaging preparation for transportation which facilitates handling, but which does not necessarily conceal or completely enclose the goods." *Aluminios Pozuelo Ltd. v. S.S. Navigator*, 407 F.2d 152, 155 (2d Cir. 1968). Courts in this District apply that rule to treat individually prepared and listed units as COGSA packages. See *Impact, Inc. v. Int'l Freight Express (USA), Inc.*, No. 96 Civ. 5204 (DLC), 1997 WL 570580, at *4 (S.D.N.Y. Sept. 12, 1997); *St. Paul Fire & Marine Ins. Co. v. Sea-Land Serv., Inc.*, 735 F. Supp. 129, 131–32 (S.D.N.Y. 1990) (refusing to enforce a reverse-side clause limiting liability to $500 for an entire container rather than for each package inside). Second, unincorporated material does not change the count. Any pallet count or freight convention the Vessel Interests invoke appears only in the documents that are outside the four corners of the relevant bills of lading. Pallet counts may appear in packing lists or other documents the operative bills never adopt. Where as here the bills of lading are unambiguous, such extrinsic documents are inadmissible and are not controlling. *Sunpride (Cape) (Pty) Ltd. v. Mediterranean*

*Shipping Co.*, No. 01 Civ. 3493 (CSH), 2003 WL 22682268, at *19–20 (S.D.N.Y. Nov. 12, 2003).

## IV. Meet-and-Confer Status.

Cargo Interests have met and conferred with Owners several times and the parties are at an impasse on the proper definition of package in this instance. Pursuant to the Court's January 1, 2026 Order setting a briefing schedule, Cargo Interests submit this Motion to Enforce the Settlement Agreement.

## V. Conclusion and Requested Relief.

The Settlement Agreement and the operative bills point the same direction. The Vessel Interests agreed that carrier-drafted package definitions are off the table, and the bills they issued disclose the very units they now want to ignore. Cargo Interests respectfully request that the Court enforce the Settlement Agreement and determine the COGSA package count for the disputed lines as follows: for Lines 603 through 606, that the packages are the 3,771 individual tires disclosed on the NVOCC bill and described again on the carrier bill, not the containers; for Line 608, that the packages are the 830 pieces disclosed on the bill, not the container and not a per-container customary freight unit; and for Line 712, that the packages are the 932 pieces disclosed on the bill, with no customary-freight-unit reduction. Cargo Interests further request that the Court hold that unincorporated packing lists and ONE's online terms, including clause 26.2, cannot override the face of the operative bills or Section 2.H of the Settlement Agreement, and that the Court grant such other and further relief as it deems just and proper.

Dated: August 4, 2026.

NICOLL BLACK ALTENBRUN & FEIG



By: ___________________________
Jonathan W Thames
Deniz Perkowski
Attorneys for Affiliated FM Insurance, Continental Insurance Company , and Zurich Insurance, Zurich

GRANTED. By separate order, the Court will refer the claims in this action to the Magistrate Judge for a ruling.

SO ORDERED.

Paul A. Engelmayer
___________________________________
PAUL A. ENGELMAYER
United States District Judge

Dated: August 5, 2026
New York, New York