UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>*ONE APUS* CONTAINER SHIP INCIDENT ON NOVEMBER 30, 2020<br><br>*This Document Relates to Mitsui Sumitomo Ins. Co. of Am., et al. v. M/V One Apus, et al., Case No. 22-cv-08233, Southern District of New York* | 22-md-3028 (PAE)<br><br>**Referral of Claims to Magistrate Judge Pursuant to Settlement Agreement** |

**MOTION TO ENFORCE SETTLEMENT AGREEMENT**

CHIDORI SHIP HOLDING LLC and JESSICA SHIP HOLDING S.A., making restricted appearances as Owners and bareboat charterers, respectively, of the M/V ONE APUS (collectively, "Owners") respectfully move this Court, pursuant to Section 3(A) of the Settlement Agreement entered into in this action (ECF No. 575-1) and this Court's retained jurisdiction to enforce that Agreement, for an order referring certain claims to the Magistrate Judge for a ruling.

**BACKGROUND**

**A. The Settlement Agreement**

On December 8, 2023, the parties to the various lawsuits subject to the above-captioned MDL Action entered into a Settlement Framework Agreement ("SFA") to resolve the claims of Cargo Interests[1] arising from the loss of and/or damage to cargo aboard the M/V ONE APUS (ECF No. 575-1; Declaration of Caroline J. Wilson ["Wilson Decl."] ¶ 3, Ex. A). The SFA established a structured claim submission and adjustment process, under which the Claimant would produce

[1] "Cargo Interests" being the shippers, consignees, cargo owners, and/or their subrogated insurers seeking recovery for loss off or damage to cargo.

documents supporting its claim and its right to recover and Owners would evaluate each cargo claim and pay a percentage of the provable damages under the United States Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 *et seq*. (note). Notwithstanding the general agreement to pay a percentage of provable damages for each claim, Owners expressly reserved four enumerated defenses including: (1) Time Bar; (2) Title/Right to Sue; (3) Quantum of Damage Amount; and (4) Package Limitation. Relevant here to the claim subject to this Motion are the Owners Package Limitation and Quantum of Damage Amount defenses. The parties to the SFA agreed that the Package Limitation defense "refers to the $500 per-package or customary freight unit limitation provided under COGSA *ex proprio vigore*, except where an applicable contract provides for a higher limitation amount." (SFA, Section 2(J)). Additionally, the parties agreed that Quantum of Damage Amount defense means that Owners will only settle the measure of damages based on the "provable damages under COGSA." (SFA, Section 2(L)).

The SFA applies to claims identified in "Schedule C" which represents a master list of applicable legal actions and claims subject to the same. For ease of reference the parties have referenced each particular claim by its "line" number in Schedule C. (ECF No. 575-2)

Section 3 of SFA contains a Dispute Resolution clause that provides that any claim involving a legal/factual dispute may be referred to the Magistrate Judge for determination. The SFA provides that the party requesting referral "shall file any required pleadings or other documents with the Court to request that the Magistrate issue a ruling on the disputed [c]laim." (SFA, Section 3(A)).[2]

**B. <u>The Disputed Claim</u>**

The disputed claim at issue here is subject to *Mitsui Sumitomo Ins. Co. of Am., et al. v. M/V One Apus, et al.*, Case No. 22-cv-08233 and is identified by its reference number in Schedule C to the SFA as Line 566 (the "Disputed Claim"). The Disputed Claim involves a cargo of 707 cartons

[2] Any opposition is due fourteen days thereafter. (SFA, Section 3(A)).

of microphones stuffed in container no. TCLU9550963 and moved under NVOCC[3] Hecny Shipping Limited bill of lading no. NSZX20111540 and VOCC[4] ONE sea waybill no. ONEYHKGAN4315500. (Ex. B to Wilson Decl.; Ex. C to Wilson Decl.). Plaintiff Continental Insurance Company ("Plaintiff") as subrogated insurers, seek to recover damages in the amount of $663,986.82.

The invoice value of the subject cargo totals $340,376.28. (Ex. D to Wilson Decl.) The packing list and above referenced bill of lading and sea waybill all confirm that the cargo was packaged into 707 cartons. (Ex. E to Wilson Decl.) Plaintiff represents that the total claim amount of $663,986.82 is based on the resell value of the claimed goods, but has not provided any documentary evidence that would reflect, let alone substantiate, the claimed resell value of the subject goods. (Wilson Decl. ¶ 8).

## ARGUMENT

### A. Plaintiff Has Presented No Evidence to Support Its Claim for Lost Profits

Under COGSA, a cargo claimant is entitled to recover only the loss it actually incurred, and it bears the burden of proving both the fact and the extent of that loss. Section 4(5) of COGSA is explicit on this point: "In no event shall the carrier be liable for more than the amount of damage actually sustained." "In determining damages, the burden of proof never leaves the plaintiff. *Great Am. Trading Co. v. Am. President Lines Ltd.*, 641 F. Supp. 396, 402 (N.D. Cal. 1986). Lost profits are only available under COGSA if the cargo interest "actually lost profits." *Levi Strauss & Co. v.*

---

[3] "An NVOCC is a common carrier that 'does not operate the vessels by which the ocean transportation is provided; and . . . is a shipper in tis relationship with an ocean common carrier." *In re Hapag-Lloyd Aktiengesellschaft*, 573 F. Supp. 3d 934, at 948, n.8 (quoting 46 U.S.C. 40102(17)).

[4] "A VOCC or common carrier 'holds itself out to the general public to provide transportation by water of . . . cargo between the United States and a foreign country for compensation;' assumes responsibility for the transportation from the port or point of receipt to the port of destination;' and 'uses, for all or part of the transportation, a vessel operating between a port in the United States and a port in a foreign country." *In re Hapag-Lloyd*, 573 F. Supp. 3d at 948, n. 5. To the extent there is an NVOCC involved in the shipment, the VOCC issues a bill of lading or waybill to the NVOCC, and the NVOCC issues a bill of lading or waybill to end receiver.

*Sea-Land*, No. 00-cv-7585, 2003 U.S. Dist. LEXIS 8171, at *3 (S.D.N.Y. May 14, 2003); *see also Valerina Fashions, Inc. v. Hellman Int'l Forwarders, Inc.*, 897 F.Supp. 138, 140 (S.D.N.Y.1995) (Plaintiff "must show that it in fact suffered lost profits and that it could not mitigate damages by substitution of comparable goods from the market.").

A simple representation that the loss includes recovery of lost profits, without providing any supporting evidence, does not satisfy that burden. Plaintiff has failed to produce evidence that supports recovery of lost profits. The claim for lost profits should therefore be rejected and adjustment of this Disputed Claim should only consider the invoice value.

**B. <u>The $500 Per Package Limitation Applies</u>**

Given that Plaintiff is only able to prove damages in the amount of $340,376.20, based on the invoice value of the cargo, the next step is to apply COGSA's package limitation. COGSA provides that "neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500." COGSA § 4(5). As noted above, however, "[i]n no event shall the carrier be liable for more than the amount of damage actually sustained." *Id.* Accordingly, Owners' liability is limited, on a per-package basis, to the lesser of $500 or the actual value of the package.

Here, the cargo consisted of 707 cartons, with each carton constituting the relevant "package" for purposes of COGSA's limitation of liability. Because not every carton had an invoice value exceeding $500, Plaintiff cannot simply multiply the 707 cartons by $500 to determine Owners' maximum exposure. Rather, the limitation must be applied individually to each carton: for any carton valued at more than $500, Owners' liability is capped at $500, while for any carton valued at less than $500, Owners' liability is limited to the actual invoice value. With reference to the attached calculation demonstrating the value of each carton, the package limitation reduces the overall claim amount to $327,056.00, of which Owners must only pay the agreed upon percentage of the same per the terms of the SFA. (Ex. F to Wilson Decl.).

## CONCLUSION

For the reasons outlined above, Owners respectfully request that the Magistrate Judge issue a ruling on the Disputed Claim finding that Plaintiff has failed to prove it is entitled to recover for the resell value of the goods and that, in any event, the package limitation reduces the overall claim amount to $327,056.00. After applying the agreed upon percentage, this would mean that Owners' settlement would be in the amount of $212,586.40.

Dated: August 4, 2026

By: *<u>/s/ Timothy Semenoro</u>*

Timothy Semenoro
Robert E. O'Connor
MONTGOMERY McCRACKEN WALKER & RHOADS LLP
437 Madison Avenue
New York, New York 10022
Tel: (212) 867-9500
Email: tsemenoro@mmwr.com
rconnor@mmwr.com

and

*/s/ Caroline J. Wilson*

Alan Nakazawa
Caroline J. Wilson
COLLIER WALSH NAKAZAWA LLP
*Pro Hac Vice*
180 E. Ocean Blvd., Suite 500
Long Beach, California 90802
Tel: (562) 317-3300
Email: alan.nakazawa@cwn-law.com
caroline.wilson@cwn-law.com

GRANTED. By separate order, the Court will refer the claims in this action to the Magistrate Judge for a ruling.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: August 5, 2026
New York, New York